It may be proper to observe, however, that a personal service of the subpœna upon the defendant is not necessary to create a lis pendens where he has a known residence in this state. For in case of his absence from home the subpœna may be served at his residence, upon his wife or servant, or some other member of the family of suitable age and discretion ; although the complainant's bill cannot be taken as confessed against him on such a service, without instituting further proceedings to compel his appearance. (*Thomas* v. *The Earl of Jersey*, 2 *Myl. & Keen*, 398. *Smith* v. *Parke*, 2 *Paige's Rep.* 298. 1 *Grant's Pr.* 125. 1 *Newl. Pr.* 75.) And where the defendant is proceeded against as an absentee under the statute, the actual publication of the notice of the order for him to appear and answer the complainant's bill would probably be considered as equivalent to a service of the subpœna at the defendant's place of residence, in creating a lis pendens.

In the case before me, the defendants cannot be considered as purchasers or assignees of the property of Patten pendente lite, so as to subject the assigned property to the claims of his creditors in the suits in which the receiver was appointed. And the injunction must, therefore, be dissolved.

---

### RUCKMAN *vs.* ASTOR.

A purchaser of mortgaged premises, which were redeemed within the time allowed by the act of 1837 concerning the sale of real estate by mortgage, is not entitled to retain the rents and profits intermediate the sale and the time of the redemption, in addition to the amount of his bid and the ten per cent interest thereon ; although the owner of the equity of redemption neglected to give the requisite security to prevent the purchaser from taking possession of the property immediately after the confirmation of the report of the sale.

A sale and assignment of the equity of redemption of mortgaged premises, where the mortgagee is in possession, necessarily carries with it to the purchaser the right to an account for the rents and profits of the premises, as an incident to the right of redemption, and as an equitable offset against the amount due upon the mortgage.

Upon a decree of strict foreclosure, where the mortgagee is in possession of the mortgaged premises, if such premises are redeemed within the time allowed by the decree for that purpose, the mortgagee must account to the owner of the equity of redemption for the rents and profits received subsequent to the decree.

April 5.   THIS was an appeal from a decision of the vice chancellor of the first circuit allowing a demurrer to the complainant's bill. In October, 1835, S. Geer mortgaged a lot of land, in the city of New-York, to the defendant; the equity of redemption in which lot was by divers mesne conveyances transferred to Root & Stuyvesant. The mortgage was afterwards foreclosed in this court, and Astor became the purchaser of the mortgaged premises, under the decree, on the 9th of May, 1838. And a few days afterwards he received the master's deed and entered into the receipt of the rents and profits of the mortgaged premises; the owners of the equity of redemption not having given security to the purchaser, for the value of the possession and use of the premises, &c. as required by the act of the 18th of April, 1838. Two days before the expiration of the year allowed by law for the redemption of the premises, Root & Stuyvesant sold and conveyed to the complainant all their claim, right, title, interest and demand of, in and to the mortgaged premises, and all their right to redeem the same from the operation and effect of the sale. And on the 8th of May, 1839, he redeemed the premises, by paying to the master the amount of the purchase money with ten per cent interest thereon; and took from the master a certificate of such redemption, which was duly recorded as directed by the statute. The bill in this cause was thereupon filed for an account of the rents and profits of the premises during the year, which Astor had received but refused to account for and pay over to the complainant.

*S. Glover*, for the appellant.

*J. Miller*, for the respondent.

THE CHANCELLOR. The first question presented by the demurrer in this case is, whether the purchaser of mortgaged premises which were redeemed within the time allowed by the act of 1837 for that purpose, was entitled to the rents and profits received by him, intermediate the sale and the time of redemption, in addtion to his purchase money and ten per cent interest thereon, where the owner of the equity of redemption neglected to give security to prevent such purchaser from taking possession? Upon this question I think the vice chancellor came to the correct conclusion. Where the mortgaged premises were insufficient to pay the amount due thereon, so that the mortgagee would be compelled to bid the full value of the premises at the time of the sale, to enable him to recover his debt and costs, the legislature probably would not have had the right to deprive him of the use of the premises for a year, to give the owner of the equity of redemption a further time to redeem, without giving security for the use of the property in the mean time, in case he should not elect to redeem. For that would, to a certain extent, impair the obligation of the contract, as to a mortgage executed before the redemption law took effect.

The spirit and intent of the original redemption law unquestionably was to give to the purchaser the amount of his purchase money and interest only, at the rate of ten per cent, if the premises should be redeemed. But as, by the rules and practice of this court, the purchaser at the master's sale was to be let into possession as soon as the eight day order nisi to confirm the report of the sale had become absolute, it became necessary to alter the rule on this subject so as to protect the rights of both parties; by permitting the owner of the equity of redemption to retain the possession, upon his giving security for the rents and profits if he should not elect to redeem, and allowing the purchaser to take possession for his own protection where such security was not given. The 135th rule as amended, therefore, was a judicial construction as to the spirit and intent of the redemption act of 1837. And that construction had been

adopted and sanctioned by the legislature, in the amendatory act of 1838, previous to the purchase by this defendant. The purchaser in this case, therefore, was in the same situation as a mortgagee in possession after a decree for a strict foreclosure, previous to the expiration of the time allowed by such decree for the redemption of the premises. There, in case the mortgage money mentioned in the decree, with the interest thereon, is not paid within the time limited for that purpose, the equity of redemption is forever barred, and the mortgagee will be permitted to retain the rents and profits which he has received subsequent to such decree. But if the redemption takes place, as authorized by the decree, the mortgagee must relinquish the possession, to the owner of the equity of redemption; and must account to him for the rents and profits of the premises while he held the possession, after deducting the necessary disbursements for repairs, taxes, &c.

The vice chancellor allowed the demurrer upon the supposition that the conveyance and assignment of the equity of redemption to the complainant, as the same is stated in the bill, was not broad enough to transfer to him the rents and profits which had accrued after the sale and before the premises were redeemed. In this construction of the assignment to the complainant, I think the learned vice chancellor overlooked the principle upon which this court proceeds in allowing the redemption of mortgaged premises. A sale and assignment of the equity of redemption, where the mortgagee is in possession, necessarily carries with it to the purchaser the right to an account for the rents and profits of the mortgaged premises, as an incident to the right of redemption. For he has the right to offset the amount of the rents received by the mortgagee, while in possession, against the principal and interest due upon the mortgage. Thus, in the anonymous case of what Lord Hardwicke called the prowling assignee, who for a very inconsiderable sum bought an equity of redemption of mortgaged premises of which the mortgagee had been in possession for a long time, his lordship, though it was with

great reluctance, found himself compelled to decree an account of the rents and profits, as well as a redemption of the mortgaged premises, in his favor. (*Atk. Rep.* 313.) The assignment of the equity of redemption to the complainant in this case not only carried with it the right to redeem the premises, and thereby to invest himself with the same estate therein which the former owners of the equity of redemption had before the decree of foreclosure, but also the right to the intermediate rents and profits received by the purchaser, as incident to such redemption. I think the language of the assignment itself shows that the parties thereto must have understood that the complainant was to be entitled to every right and interest in the mortgaged premises, and in the rents and profits thereof, which the assignors themselves had previous to such assignment.

The decree appealed from is therefore reversed with costs, and the demurrer is overruled. The defendant must pay the costs upon the appeal and upon the demurrer; and he answer the bill within the usual time, unless further time is given by the vice chancellor, to whom the proceedings are remitted.