Samuel Morris, Administrator, etc., et al., Respondent *v.* Samuel Budlong, Impleaded, etc., Appellant.

Where a deed, absolute on its face, is claimed to have been intended simply as a mortgage, proof of an express promise to pay on the part of the alleged mortgagor is not absolutely essential to sustain the claim; the absence of such a promise tends strongly to disprove it, but is not conclusive against it.

The farm of M. having been sold on execution, and proceedings having been instituted to foreclose a mortgage thereon, B., the brother of Mrs. M., agreed with her to bid off the place on the foreclosure sale, purchase the other incumbrances thereon, and hold it for her benefit; and to secure him for the moneys paid, etc.; she agreeing to pay all expenses, and also for B.'s time and services, and to relieve him in a specified time. B. thereupon performed the agreement on his part, and immediately after the purchase took possession and received most of the avails

until March 31, 1866  Previous to that date the parties settled and adjusted the amount due B. for the liens and charges paid by him, other than the price paid at the foreclosure sale, and the amount paid to redeem from the sale on execution, and for his own time; on that day B. presented his claim for what he had paid out in addition to the sum found due on the former settlement.  Mrs. M. paid the sum so claimed, received a deed, and gave a mortgage for the sum so found due.  This action was commenced in 1874 to recover back an alleged over-payment. *Held*, that it was a question of fact for the referee, as to whether the arrangement amounted to a conditional sale, or whether it placed B. in the position of mortgagee ; that the right of Mrs. M. as mortgagor having been established by the findings of the referee, it could only be extinguished by legal proceedings or by her refusal to redeem when properly called upon ; and that, therefore, Mrs. M., at the time of the conveyance to her had a right to the conveyance upon reimbursing B. as agreed, also to an accounting to ascertain that amount ; but that it was competent for the parties to act upon the statement of B.

The referee, in stating an account between Mrs. M. and B., found that the items of expenditures, etc., exceeded the amount charged by B.  He credited Mrs. M., among other things, for services rendered for boarding the help working on the farm while B. was in possession, and for use of teams and tools, etc.  B. pleaded the statute of limitations.  *Held*, that the credit was error ; that such indebtedness had no connection with the agreement under which B. purchased ; that while it might have been applied by the parties to reduce the advances, it was not, and no right of application existed without agreement ; that the claim therefore was, at the time of the conveyance, a simple debt, upon which an action might have been brought ; that the same was barred by the statute ; and that the bar was not removed by changing the form of the action.

The referee found that defendant kept no accurate account of the income of the farm while in possession, and that it was not worked at its full capacity ; and charged B. with the rental value thereof, also for wood cut upon the farm by him.  *Held*, error ; that in the absence of a finding of willful default B. would have been chargeable only for the rents and profits actually received and for the wood ; but that as the omitted credits related solely to the matter of redemption, and as the redemption was perfected and the mortgage claim satisfied without allowing them, the relations of the parties changed from that of mortgagee and mortgagor to debtor and creditor ; that for the amount overpaid an action at law lay in favor of Mrs. M., against which cause of action the statute of limitations run ; and so was a bar.

The referee found that Mrs. M. discovered the mistake in July or August, 1872.  *Held*, that this did not prevent the running of the statute prior to that time.

*Hubbell* v. *Moulson* (53 N. Y., 225), distinguished.

Plaintiff asked to have the mortgage given by Mrs. M. canceled.  The referee found there was no fraud or mistake in the final settlement,

but after finding that the payment made to B. in March, 1866, exceeded the amount due, applied the surplus on the debt represented by the mortgage and directed it to be canceled. *Held,* error; that as the money was paid upon a claim growing out of a distinct contract, from that under which the mortgage was given, and as the surplus was created in defendant's hands by charging him with moneys received out of the estate under his equitable contract, it could not be applied upon, and could not invalidate the mortgage.

Also *held,* that the fact that this equitable relief was sought did not remove the bar of the statute.

*Ferguson* v. *Morris* (4 T. & C., 689), distinguished.

*Morris* v. *Budlong* (16 Hun, 570), reversed.

(Argued October 6, 1879; decided November 11, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the fourth judicial department, affirming a judgment in favor of plaintiff, entered upon the referee's report. (Reported below, 16 Hun, 570.)

This action was originally brought by Mary Morris for an accounting between her and defendant Budlong, and for repayment of moneys alleged to have been paid to him, in excess of what he was entitled; and to have two mortgages, one executed by plaintiff to Samuel H. Ferguson, and one by him to said Budlong canceled and discharged of record. Said plaintiff having died pending the trial the action was revived and continued in the name of the present plaintiff.

The facts appear sufficiently in the opinion.

*Francis Kernan,* for appellant. The agreement of Budlong with plaintiff's intestate did not constitute him a mortgagee in possession. (4 Kent's Comm. [11th ed.], 147 [133, marg.]; id., 157 [144, marg.]; Hilliard on Mortg's, 295, 296, 297; *Robinson* v. *Cropsey,* 2 Edw. Chy., 138, 143, 444; *Glover* v. *Payne,* 19 Wend., 518, 521; *Flagg* v. *Mann,* 14 Pick., 467; *Holmes* v. *Grant,* 8 Paige, 243–247, 248, 260; *Hill* v. *Grant,* 46 N. Y., 496; *Conway's Ex'r's* v. *Alexander,* 7 Cranch, 218, 237; *Goodman* v. *Grierson,* 2 Ball & Beat., 274.) Mrs. Morris not having performed within the time

specified in the agreement any privilege she might have had under it was lost. (*Robinson* v. *Cropsey*, 2 Edw. Chy., 138, 147, 148; *Davis* v. *Thomas*, 1 Russ. & M., 506; *Glover* v. *Payn*, 19 Wend., 518, 522; *Robinson* v. *Cropsey*, 8 Paige, 243, 260.) The agreement being by parol, was void by the statute, both in equity and at law. (3 R. S. [6th ed.], 141, §§ 6, 8 [marg., 134, 135]; 2 id., 1105, §§ 51, 52 [marg., 723]; *Wheeler* v. *Reynolds*, 66 N. Y., 227, 231, 236–237; *Lathrop* v. *Hoyt*, 7 Barb., 59; *Levy* v. *Brush*, 45 id., 589.) There was no part performance of this agreement which would take it out of the operation of the statute. (66 N. Y., 231, 232; *Levy* v. *Brush*, 45 id., 589, 595–596–597; *Wheeler* v. *Reynolds*, 66 id., 229, 230.) A refusal to perform a parol agreement as to land, void by the statute, is in no sense a fraud either in law or equity. (*Wheeler* v. *Reynolds*, 66 N. Y., 228, 234; *Levy* v. *Brush*, 45 id., 589, 595–596–597.) Parol testimony, or prior parol agreements as to the farm, were not competent or sufficient to establish that the transaction between Mrs. Morris and Budlong on the 31st of March, 1866, was not what the written instruments then executed between them prove it to have been, viz. : a sale and purchase of the farm subject to the mortgage for the price of $11,500. (3 R. S. [5th ed.], 220, §§ 6, 8; *Lathrop* v. *Hoyt*, 7 Barb., 59; *Wheeler* v. *Reynolds*, 66 N. Y., 227, 236; *Levy* v. *Brush*, 45 id., 589; *Parkhurst* v. *Van Cortland*, 1 J. Chy., 274; *Pattison* v. *Hull*, 9 Cow., 747, 754; *Austin* v. *Sawyer*, 9 id., 39; *Renard* v. *Sampson*, 12 N. Y., 561.) This action was barred by the statue of limitations. (Wait's Code of 1871, §§ 91, 97; *Foot* v. *Farrington*, 41 N. Y., 164, 170–174; *Hubbell* v. *Sibley*, 50 id., 468; *Bruce* v. *Tilson*, 25 id., 194; *Roberts* v. *Sykes*, 30 Barb., 173; *Borst* v. *Corey*, 15 N. Y., 505, 507; *Foot* v. *Farrington*, 41 id., 164.) The pretended agreement is void under our statutes concerning the "Creations of Estates," "Uses and Trusts," and "Powers." (3 R. S. [5th ed.], 9 to 29, 15, §§ 45, 47, 49, 51, 52, 53, p. 21, §§ 77–83, p. 23, §§ 94, 95, 96, 125; id., p. 220, §§ 6, 8, 10; *Abbott* v. *Draper*, 4 Den., 51; *Sturtevant* v. *Sturte-*

*vant*, 20 N. Y., 39; *Davis* v. *Townsend*, 10 Barb., 333, 346; *Lathrop* v. *Hoyt*, 7 id., 59, 61–64.) If not void it was permitted to expire, or it was performed and settled by the parties. (*Robinson* v. *Cropsey*, 2 Edw. Chy., 138, 143, 147–148; affmd., 6 Paige, 480; *Saxton* v. *Hitchcock*, 47 Barb., 220; 4 Kent. Com., 144; 43 Barb., 274; 54 id., 153; 57 id., 313, 497; 58 id., 224; 6 Robt., 287; 8 Abb., 356; 2 Daly, 267; 41 N. Y., 155; 32 id., 543, 549; 35 id., 279; 3 Abb. [N. S.], 197; 13 How., 557; 26 Barb., 9; 27 id., 638, 651, note *a*; 15 id., 70; 34 N. Y., 320; 1 Wend., 478; 2 Cow., 246, 300; 6 J. Chy., 417; Doug., 771; 1 Bro., 364; 3 Ves., 126, 339; 1 J. Chy., 417; 4 Paige, 403; 3 id., 242; 5 J. Chy., 35; 3 Sandf. Chy., 135.) The transaction between the parties was a conditional sale, differing widely and entirely from a mortgage. (4 Kent Comm., 144.) Budlong is not liable for rents and profits, nor for any of the other claims sought to be recovered in this action. (*Holmes* v. *Grant*, 8 Paige, 243; *Sexton* v. *Hitchcock*, 47 Barb., 220; *Baker* v. *Thrasher*, 4 Den., 493; *Nill* v. *Grant*, 46 N. Y., 496; *Whitney* v. *Townsend*, 2 Lans., 258–259; *Conway's Exrs.* v. *Alexander*, 7 Cranch, 218.)

*Edwin H. Risley*, for respondents. The agreement under which Mr. Budlong became the purchaser of the Morris farm at the mortgage sale, made the transaction an equitable mortgage, and gave to the parties no other rights or remedies than those of mortgagor and mortgagee. (*McBurney* v. *Wellman*, 42 Barb., 390; *Tebbs* v. *Morris*, 44 id., 138; *Horn* v. *Keteltas*, 46 N. Y., 605; *Bown* v. *Dewey*, 1 Sandf., Chy., 56; *Ryan* v. *Dox*, 34 N. Y., 307; *Dodge* v. *Wellman*, 43 How., 437; *Carr* v. *Carr*, 52 N. Y., 251; *Stoddard* v. *Whiting*, 46 id., 627.) Defendant was liable to perform his contract, even though it was by parol. (*Wheeler* v. *Reynolds*, 66 N. Y., 227.) The relation of mortgagor and mortgagee, once established, always continues until determined by a judgment of a court of competent jurisdiction, or by a

contract founded upon a valuable consideration. (*Clark* v. *Henry*, 2 Cow., 327; *Murray* v. *Walker*, 31 N. Y., 399, 403; *Mickles* v. *Dillaye*, 17 id., 80; *Carr* v. *Carr*, 52 id., 251, 258; *Trenim* v. *Marsh*, 54 id., 599; *Horn* v. *Keteltas*, 46 id., 605; 1 Hilliard on Mortg's [2d ed.], 418, §§ 2–11, and cases cited in note 6; 1 Washburne on Real Prop. [2d ed.], 628, 629, 630 [marg., page 577]; *Mickles* v. *Dillaye*, 17 N. Y., 80, 84 ; *Van Buren* v. *Olmsted*, 5 Paige Chy., 1; *Gorden* v. *Lewis*, 2 Sumner, 143; *Trulock* v. *Robey*, 15 id., 265; *Holbid* v. *Burr*, 17 Conn., 556; *Kellogg* v. *Rockwell*, 19 id., 446; *Montgomery* v. *Chadwick*, 7 Iowa, 134.) Upon the conceded facts, plaintiff showed both fraud and mistake in the settlement of March 31, 1866. (1 Story's Eq. Juris. [10th ed.], §§ 321–325; *Platt* v. *Platt*, 2 N. Y. S. C., 25; *Henry* v. *Davis*, 7 J. Chy., 39; *Davores* v. *Fanning*, 2 id., 251, 260; *Sears* v. *Shaffer*, 6 N. Y., 268; *Gardner* v. *Ogden*, 22 id., 327, 341; *Bryce* v. *Lor. Ins. Co.*, 55 id., 240; *Boyer* v. *Parker*, 2 Den., 107; *Hubbell* v. *Moulson*, 53 N. Y., 225, 228; 1 Story's Eq. Juris. [10th ed.], § 311–313; Code, § 481; *Hill* v. *Grant*, 46 N. Y., 496; *Macy* v. *Wheeler*, 30 id., 231.) There being evidence tending to support the findings of the referee and the General Term, upon the question of fraud, their conclusion is not reviewable in this court. (Code, § 1337; *Macy* v. *Wheeler*, 31 N. Y., 231; *Henry* v. *Wilkes*, 37 id., 562; *Wright* v. *Hunter*, 46 id., 409; *Ostrander* v. *Fellows*, 39 id., 350.) The statute did not begin to run so long as Mr. Budlong was in possession of the premises under the agreement. (*Miner* v. *Beekman*, 50 N. Y., 337, 344; *Hubbell* v. *Sibley*, 50 id., 468; *Hubbell* v. *Moulsen*, 53 id., 225, 228, 229; Old Code, § 97; *Hubbell* v. *Sibley*, 53 N. Y., 468; Code, § 1337; 31 N. Y., 231; 37 id., 562; 39 id., 350.) The statute did not begin to run until the discovery by Mrs. Morris of the fraud. (*Gates* v. *Andrews*, 37 N. Y., 657.) The referee properly received the evidence of Mrs. Morris directing her sons to work on the farm in reduction of the mortgage debt. (*Armstrong* v. *McDonald*, 10 Barb., 300.)

DANFORTH, J.    The record before us shows the flexibility of our method of procedure, in its application.    Upon the facts found by the referee, the material allegations in the complaint are unproven ; after repeated and well founded objections by the defendants to evidence of facts not within the issue, and several unsuccessful motions to dismiss the complaint ; because upon the evidence, the alleged cause of action was unproven, the plaintiff at the close of the testimony applied to the referee to have the complaint and reply conformed to the proof.    The application was granted, but it does not appear that any amendment was made, or the pleadings changed.    The conclusion reached by us however will render it unnecessary to consider the objections above referred to, and so far as this appeal is concerned it may be disposed of on the referee's report.    From this report it appears that John Morris in April, 1856, purchased of one Mrs. Nurse the premises described in the complaint, and with Mary Morris his wife, executed a mortgage to Mrs. Nurse, to secure the payment of the purchase-money. Samuel H. Ferguson was a brother-in-law of John Morris, and owned an adjoining farm.    Prior to December, 1859, both had become greatly involved and embarrassed financially, and the farms of both had been sold on execution. Ferguson's embarrassments grew out of obligations and liabilities which he had incurred for John Morris.    Proceedings instituted for the foreclosure of the Nurse mortgage were to culminate in a sale thereunder in March, 1860.    A number of judgments were also outstanding against Morris and Ferguson, liens on the Morris farm, and as between himself and Ferguson, were for Morris to pay.    These with other similar claims were held by one Hubbell.    Budlong was a brother of Mrs. Morris, and a brother-in-law of Ferguson. He had been applied to by Ferguson, had undertaken to assist him in his financial difficulties, and as early as January, 1860, interviews were had between Ferguson, Budlong and Mrs. Morris, in which the embarrassments of the Ferguson and Morris families were discussed, and the amount of the

liabilities above referred to, resulting in an agreement that Budlong should on the foreclosure sale of the Morris farm, bid it in for the benefit of Mrs. Morris, purchase the Hubbell claims, and such others as were liens on the farm, and were necessary to perfect his title, and hold it in himself for her benefit, "to secure him for such moneys as he should pay out in carrying into effect this agreement, and give her one year in which to redeem by repaying him the moneys he should pay out in carrying into effect the agreement, and that Mrs. Morris should also pay him all expenses, and for his time and trouble in connection therewith." Budlong thereafter purchased the claims above referred to, took a deed of the Morris farm from the sheriff, and on the 23d of March, 1860, purchased the premises in question on the foreclosure sale, paying therefor in money, and by his bond and mortgage $11,290.87. To raise the money for these purposes, Budlong was obliged to go to Wisconsin to get in some investments which he had there, thus incurring expenses, and an absence from home of three or four weeks. That he should do so was agreed upon at the time the above arrangement was made. Immediately after the mortgage sale Budlong entered into possession of the farm, cultivated it, and received the profits thereof except such portion as was received by the Morris family, until about March 31, 1866. During the first three years that family occupied the whole of the farm-house, and during the remainder it was occupied by them, and the family of Budlong. The time for payment by Mrs. Morris under the above agreement expired, and was extended one year. The money was not paid, but no further extension was given. In December, 1865, and in March, 1866 (prior to the thirty-first day of that month), Mrs. Morris, her husband, John Morris, Ferguson and Budlong, after several interviews adjusted the amount due from Ferguson to Budlong at $3,334, and some cents, as of December 19, 1865, and the amount due from John Morris to Ferguson, although somewhat in excess of that sum, was adjusted at the same amount

as of the same date. It was made up of liens and charges on the Morris farm, and was for Mrs. Morris to pay. In this settlement everything was included, except what Budlong had paid in redeeming the farm from sale on execution, and under the mortgage foreclosure, payments of interest, or for his time and services in carrying out the agreement made by him. The referee finds this to have been a just and fair settlement. On the 31st day of March, 1866, Mrs. Morris, and her two sons, Samuel, and John Morris, jr., one about twenty, the other twenty-four years of age, Samuel Budlong, and Samuel H. Ferguson met by appointment at an office in Utica, and "on that occasion Budlong claimed that there was due him from Mrs. Morris $11,500, for what he had paid out in and about redeeming the farm, and he also claimed in addition $3,400.63, being the sum found his due on the settlement before referred to with interest from December 19, 1865, to March 31, 1866. Mrs. Morris not having money enough to satisfy both claims, paid him in money $11,500, and it was agreed that Ferguson should give Budlong a mortgage on his farm for the $3,400.63, and Mrs. Morris should give Ferguson a mortgage to indemnify him. This was done, and Budlong conveyed the Morris farm to Mrs. Morris, assigning to her, or satisfying the judgments and mortgages which he had taken; liens on the Morris farm. The items covered by these two settlements were not the same. This action was commenced by Mrs. Morris July 24, 1874, and the referee finds that upon the 31st day of March, 1866, on the occasion referred to, "the balance due Budlong from Mrs. Morris was $8,927.35; that on that day she paid him $11,500, thus overpaying him $2,572.65, in which last amount he thereupon became indebted to her." He also finds that the two mortgages then given were procured by "mistake or fraud," and were without consideration, and judgment is ordered canceling the mortgage, and for the recovery of the sum thus overpaid. The question lying at the bottom of these transactions was whether the contract between Mary Morris and Mr. Budlong, and on

the strength of which the latter acquired title to the premises then under foreclosure, amounted to a conditional sale or a mortgage, or it may be stated in this wise : Did Budlong acquire on the foreclosure, a title free from any claim on the part of Mrs. Morris, and subject only to the obligation of an agreement on his part to sell the same to her, provided she, by a day named, paid to him the price stated ? Was a purchase by her of him in contemplation, or was it an arrangement by which he should hold the property as a pledge, or security, for the repayment of money to be advanced by him ? The learned referee passed directly upon this question, and the first objection made by the appellant to the judgment, relates to the finding that Mr. Budlong was to be regarded as a mortgagee in possession of the premises, and as such liable to account to Mrs. Morris for the rents, issues and profits of the same. His contention is that it was a conditional agreement by Budlong to sell the farm to Mrs. Morris, and in support of that position refers to the fact that there was no agreement on her part to pay. It is not clear that such an agreement may not be implied as necessarily involved in the agreement found by the referee ; the latter clause at least covers an absolute promise, the former implies a loan, and every loan a debt (*King* v. *King*, 3 P. Wms. 358), but it is not necessary to determine this, for it is not material that there should have been such an obligation on her part. Its absence would be very persuasive, and tend strongly to establish the appellant's claim, but would not be conclusive (*Brown* v. *Dewey*, 1 Sand. Chy. R., 56), and so it was held by Lord Hardwick in *Lawley* v. *Hooper* (3 Atkyn's R., 278), and more than a century afterwards by this court, after an examination of all the authorities (*Horn* v. *Keteltas*, 46 N. Y., 605), and need not be further argued. Whether the relation between these parties created by the arrangement placed Budlong in the attitude of a mortgagee, or whether a conditional sale was intended, was a question fairly before the referee, and his finding must be deemed conclusive. (*Horn* v. *Keteltas, supra; Hill* v. *Grant,* 46 N.

Y., 496.)   As to it, the intention of the parties must govern,
and that has been fairly found by the referee from the evi-
dence before him.   It is also well settled that this relation
may be established by parol evidence, especially where as in
this case there has been a part performance of the agreement,
and it may be so even against one holding the legal title
(*Ryan* v. *Dox*, 34 N. Y., 307), where the earlier cases bear-
ing upon this question were collated and examined by the
learned Chief Justice Davies.   (*Wood* v. *Fleet*, 36 N. Y.,
499.)   The agreement therefore between Mr. Budlong and
Mrs. Morris must be deemed proven, and this established, it
follows that her right thus acquired continued, and could be
cut off or extinguished only by legal proceedings to which
she should be a party, or by her refusal to redeem when
properly called upon. (*Case* v. *Carroll*, 35 N. Y., 385;
*Carr* v. *Carr*, 52 id., 251.)   When, therefore, the parties
met on the 31st day of March, 1866, to consummate an
arrangement for the conveyance of the property to Mrs.
Morris, she had a right to it, upon paying Budlong such an
amount as should reimburse him for moneys expended,
together with his expenses, and compensation as provided
for in the agreement referred to.   She had a right also
to have that amount ascertained, and was entitled to an
accounting.   It might be oral, or in writing, in any form,
and with or without detail.   It was competent for the
parties to act upon a simple statement of the sum due or
going to Budlong, and he cannot complain that Mrs. Morris
accepted as true, a statement made by him.   She seems
to have done so.   She asked for no particulars or items
and paid the sum stated.   Upon an alleged error in that
statement the judgment in this case has been rendered.
The correctness of this conclusion must be considered
upon the findings of the referee, and the result will be de-
cisive of this appeal.   The referee stated an account, as
between Budlong and Mrs. Morris.   He found that Bud-
long had expended moneys under his agreement with
Mrs. Morris, aside from those accounted for in the settle-

| | | |
|---|---:|---:|
| ment of December 19, 1865, amounting to | $9,380 | 40 |
| Interest on the sum paid to March 31, 1866 | 1,476 | 32 |
| That he was entitled to compensation under that contract, and fixed the sum at | 750 | 00 |
| In all | $11,606 | 72 |

This was a trifle more than Budlong claimed. The referee also credits him with the amount found due, and agreed to be paid by Mrs. Morris under the settlement of December 19, 1865, viz., $3,400.63. But on the other hand he states an account in favor of Mrs. Morris. First. He finds that during the first three years of the six " Mrs. Morris boarded all the help that worked on the farm ; " that the Morris team and farming tools were used on the farm during a portion of the first four years ; that the sons of Mary Morris by her direction and with the consent of her husband rendered services for Budlong on the premises at different times between 1860, to and including 1863, and finds that the value of such board, use of teams and tools, and services, amounted in the aggregate to $1,532. Second. That he cut wood and appropriated to his own use 100 cords, of the value when standing of $400. Third. That Budlong kept no reliable account of the income of the farm, and that it was not worked to its fullest capacity, and charges him with the annual rental value thereof during the six years succeeding the agreement, or in the aggregate for the six years, $4,400, and by the application of these items upon the moneys expended by Mr. Budlong reaches the result indicated by the judgment. .

First. The referee erred in allowing the first sum, that of $1,532. It would be difficult to maintain on the facts found that any indebtedness ever accrued from Budlong on account of either item. It is not found that the help were boarded, or the teams used, or that the sons worked, at the request of Budlong, or upon any agreement on his part relating thereto ; but admitting that an indebtedness for these mat-

ters did exist in favor of Mrs. Morris, and against Budlong,
it is clear that it had no connection with the agreement
under which it is held he purchased the farm.    It became a
simple indebtedness to be enforced or not at the option of
Mrs. Morris, and at such time and manner as she elected.
No doubt if the parties had seen fit, it might have been
applied as it accrued to reduce the advances made by Mr.
Budlong, but it was not so applied.    It was next in the
power of the parties on the thirty-first day of March to
apply it as a set-off; it was equally in their power not to do
so.    It was not then applied.    It was therefore on that day
a simple debt.    The claims of the two parties were distinct,
and no right of application or set-off existed as between
themselves independent of any agreement.    An action might
have been maintained by Mrs. Morris, but not after the
expiration of six years.    That was as early as 1870, and by
changing the form of action she does not raise the bar, which
the statute interposes against stale demands.

Second.  An account rendered upon an application to
redeem would properly charge the estate with the money
advanced by Budlong, and interest; with the expenses and
compensation provided for by the agreement, and would
credit the estate with whatever had been received from it by
sales, or rents and profits as incident to the right of redemp-
tion, and as an equitable off-set against the amount due on
the mortgage, after deducting taxes, repairs and other neces-
sary expenses incurred on account of the estate.    (*Ruckman*
v. *Astor*, 9 Paige, 517.)   It would include therefore the
proceeds of timber sold, and rents and profits actually
received.    That the farm was not worked to its fullest
capacity, furnishes no ground under the circumstances of
this case for an enlarged liability.    A provident owner
might not do that, and there is no fact stated from which the
willful default of Budlong in this respect could be found.
Nor has it been.    He is in no sense a wrong-doer.    He went
into possession under the legal title, taken with the knowl-
edge of Mrs. Morris, and continued under circumstances

which might well have induced a belief that he was in fact the owner of the estate, subject only to an agreement to sell. He was not technically at any time a mortgagee in possession. There was no mortgage. The character is cast upon him by the application of equitable rules to an oral agreement easily susceptible of two constructions ; of which the one chosen is in direct contradiction of the written instruments which display his title ; and he is therefore chargeable only with what he has received, and not with what he might have received. " I think," says Lord CRANWORTH in *Parkinson* v. *Hanbury* (2 L. R. [Eng. and Irish. App.], 1), " that it is perfectly clear law that where a person becomes possessed of a property though erroneously supposing that he is a purchaser, if it afterwards turns out that he is not to be treated as a purchaser, but only as a person who has a sort of lien upon the property that does not make him a mortgagee in possession within the meaning of that rule which charges him with willful default." In 1 Story Eq. Jur. (§ 514 *a.* [10th ed.]), it is said: " Where the estate is thrown upon one in the necessary enforcement of his legal rights, or comes to his possession as trustee, he should only be required to act in good faith, and to account for what he in fact realizes," and so in *Moore* v. *Cable* (1 J. Chy. 384), Chancellor KENT directed the defendant to be charged only with rents and profits received. In *Harper's Appeal* (14 P. F. Smith, 315), it is declared that " whatever the rule on accounting might be, where the party charged was a mortgagee under an ordinary formal mortgage it ought not to be the same when by the express agreement of the party seeking equitable relief he took and held possession as absolute owner."

In the case before us there was not only a title taken by the defendant, by the plaintiff's wish, but there is alleged against it only an oral promise to convey at a certain time upon payment of certain moneys, and no agreement to account in the meantime. There is nothing to show any want of good faith on the part of the defendant in his man-

agement of the property, nor that he did not act prudently and according to his best judgment in the matter. The omission of Mrs. Morris to redeem at the end of the time limited, the year, or at the end of the second year; her omission to arrange for further time to do so, the continued occupation of the premises by Mr. Budlong, apparently as owner; with no demand for an account of rents and profits; all bear upon this question, and with the considerations before adverted to, show that the referee erred in measuring the profits for which Mr. Budlong was liable by the rental value of a farm worked to its full capacity, rather than by what he actually received.

Third. But a farther and more important error occurs in the statement of account. There were manifestly two transactions upon which Mrs. Morris was liable, separate and distinct in their origin, and in their character, imposing upon her different obligations, and concerning which she had different rights. So although Mr. Budlong was a party to each, his position in them was very different. There was, first, the agreement found by the referee to have been made prior to the foreclosure sale under the Nurse mortgage, in March, 1860; under that she had the rights of a mortgagor, to redeem the farm on the terms stated, and at a time agreed upon. There was, second, her liability under the adjustment made prior to the thirty-first of March as of the nineteenth of December. The statement of Mr. Budlong on the 31st of March, 1866, that there was $11,500 due to him, related to the first transaction simply. It was his response to a demand made for an account under it, by one about to redeem. The credits which the referee now finds were then omitted from that account, relate to that matter of redemption simply, and are allowed because they show that if Budlong had credited them, the amount due him on that redemption would have been less than he claimed, viz., $4,776.72, or adding compensation as allowed by the referee, $750; in all, $5,526.72, instead of $11,500, thus showing an over-payment upon that occasion, and for

that redemption of $5,973.28. The whole sum was paid, and the redemption perfected. The mortgage claim was satisfied. The relations between them then changed; they ceased to be mortgagor and mortgagee, and upon the above assumption became debtor and creditor. For the amount overpaid an action at law lay in favor of Mrs. Morris against Mr. Budlong, and so it would be if the action had been for the rents and profits, and the price of the wood sold.

A mortgagee in possession takes the rents and profits and proceeds of sales, as agent or bailiff of the mortgagor (*Parkinson* v. *Hanbury, supra*), and upon the demand made, or upon the account rendered, the statute commenced to run (*Murray* v. *Coster*, 20 J. R., 576 ; *Borst* v. *Corey*, 15 N. Y., 505), and the silence, or even, concealment of Budlong, if there had been any, would not prevent the statute from applying. (*Allen* v. *Mille*, 17 Wend., 202; *Foot* v. *Farrington*, 41 N. Y., 164.) But there was no concealment, nor is that charged. The six years within which the action could have been maintained, expired, in April, 1872. The statute of limitations which the defendant has set up by answer, and now insists upon is therefore a bar, and there is no circumstance to take it away. The action is not to redeem, and for that purpose have an account taken of the rents and profits, and so ascertain the amount going to the mortgagee from the mortgagor. Redemption has been had. It was consummated on the 31st of March, 1866, when Mrs. Morris received a conveyance, and paid the balance claimed to be due. The relation of mortgagor and mortgagee no longer existed between the parties. The action and the judgment upon the cause I have been considering, is to recover back money then overpaid, or paid by mistake, or as the referee finds " fraud or mistake." The only fraud suggested is the statement of a sum due, arrived at as is claimed, without stating the credits. There is no pretence that a fraud was intended, nothing of the kind is alleged in the complaint before us, or in the findings, and for the cause of action found by the referee, a court of law, as well as a

court of equity was always open. There was concurrent jurisdiction. Upon the facts in this case the plaintiff had a complete remedy at law, but she should have brought her action within six years. (Old Code, § 91, subds. 1 and 5.) It is urged however, and the referee finds that "Mrs. Morris discovered the said fraud or mistake in the amount claimed as aforesaid in July or August, 1872," and so it is claimed that then only the statute began to run. But the provision upon which this assertion rests (§ 90, sub. 5), is confined strictly to "cases which heretofore were solely cognizable in a court of chancery;" such is not this case, and it is not helped by the alleged finding. (*Foot* v. *Farrington*, 41 N. Y., 164.) The respondent refers to *Hubbell* v. *Moulson* (53 N. Y., 225), as holding a contrary doctrine, but that case was unlike the present. In that there was no redemption. The mortgage was still outstanding, and the rights of the plaintiff claiming under the mortgagor, were said to depend upon the same principles as if the mortgagee under whom the defendants claimed was in possession, and the action had been brought against him. The case has no bearing upon the point before us. In *Gates* v. *Andrews* (37 N. Y., 657), also cited by the respondent, the plaintiff commenced his action as soon as the right to do so accrued, and the clear difference is that in the case before us the plaintiff waited more than six years after her cause of action accrued before she called the defendant into court to answer a demand, which if it existed at all, was good at law. The case cited was an action in equity by a judgment and execution creditor, for a cause cognizable only in a court of chancery, and not barred by the six years limitation.

It is also contended by the respondent that the action is for the cancellation of the mortgages, and it is upon that ground that the learned judge at General Term puts its decision. He says "a court of equity only can set aside the mortgages. In such a case the statute of limitations does not bar the right of recovery until the expiration of six years from the discovery of the fraud." That is doubtless so. But the mortgages

have no relation to the cause of action so far considered; they are not tainted with fraud, nor are they founded in any degree upon mistake. They did not grow out of the agreement entered into, and by virtue of which the relation is found to have been created between Mrs. Morris and Mr. Budlong of mortgagor and mortgagee; on the contrary they were given in consideration of the second transaction above mentioned, to secure the indebtedness fixed and liquidated prior to March 31st, and as of December 19, 1865. It included none of the matters entering into the agreement referred to, but was a settlement of other things, and in regard to it the referee says: "There was no fraud or mistake." "It was for Mrs. Morris to pay." The amount had been arrived at by her husband, herself, Budlong and Ferguson, and the items were all different, and in addition to those composing the claim of $11,500. There was consequently no fraud or mistake in regard to it, or the mortgage executed by her, or that given by Ferguson. The plaintiff fails entirely on this branch of her case. The referee however after finding that the payment made to Budlong on the 31st of March, 1866, exceeded the amount due on the first transaction, applies the surplus upon the debt represented by the mortgages, and so extinguishes them. I see no warrant for this. The money was paid upon a claim growing out of a distinct contract, and upon that specifically; it was applicable to that alone, and as the surplus has been created in the defendant's hands by charging him with moneys received out of the estate under his equitable contract, how can that surplus be applied upon the mortgage given by Mrs. Morris; or its existence, ascertained in 1874, be held to invalidate securities given upon a perfectly good consideration in 1866? That question is not answered by the facts in this case. Suppose Mrs. Morris had after the 31st day of March, 1866, sued Budlong, as she might have done, to recover back the surplus, could Budlong have retained it, or any part of it, to apply on the mortgage? Clearly not. He had received it by virtue of the security he was supposed to hold under

the agreement of 1860, in discharge of that equitable mortgage.   He could hold it for no other purpose, and the mortgage would have given no ground for a set-off.   There was no bond of union between the two claims, and the referee has erred in assuming one.

We are referred by the learned counsel for the respondent to the decision of the Supreme Court in the case of *Ferguson* v. *Morris* (4 T. & C., 689), but we have in the case before us the very element which appears to have been lacking there.   We have a finding of the referee that Mrs. Morris was liable to pay the claim of Budlong, as between her husband and herself and Ferguson.

The judgment of the General Term and the judgment entered on the report of the referee should be reversed and a new trial granted, with costs to abide the event.

All concur.

Judgment reversed.