## PAGE *vs.* BLACKSHEAR.

Where an action was brought for the recovery of land, and an attack was made on the deed under which the defendant held, on the ground that it was made to secure a debt and was void from usury, and also that from long indulgence in the use of opium and whiskey, the will power of the grantor (the plaintiff in the case) had become impaired, and that in aid of the transaction, the defendant carried whiskey to the house of the plaintiff, and the latter indulged in it, and was not at himself when the settlement between the parties was made; and where the defendant filed an equitable plea, insisting that if the issues thus raised were found against him, the plaintiff should account to him for the money he had advanced, with interest thereon, he offering to credit the plaintiff with what he had received in money and rents; and where, on the trial, there was evidence as to the value of the rents, it was admissible for the defendant to show what he had actually received for rent during the time the land was in his exclusive control, and that he used every exertion to get all that the land was worth.

(a) A mortgagee in possession under an ordinary mortgage, although liable to account for the rents, is not obliged to account according to the actual value of the land, nor is he bound by any proof that the land is worth so much, unless it can be proved that he made so much out of it, or might have done so but for his own wilful default, as if without cause he turned out a sufficient tenant who held it at so much rent, or refused to accept a tenant who would have given so much for it. A more liberal rule prevails where the mortgagee has gone into possession under the impression that the equity of redemption has been barred.

(b) Whether, in such a case, if the mortgagee went into possession with the consent of the other party, under the impression that he was the actual owner of the land, he could be held accountable for rent at all. *Quære.*

(c) Perhaps it would have been better for the plaintiff to have resorted to equity in the first instance, but having sought equity, if the deed should be found to be usurious, or to have been obtained by artifices or fraudulent practices, it should be rescinded, and in that event there should be a settlement of mutual accounts between the parties upon equitable principles. This is the extent of the decision as to the question of equitable mortgage.

BLECKLEY, C. J., concurred specially.

May 9, 1887.

Evidence. Mortgages. Mesne Profits. Interest and

Usury. Deeds. Before Judge KIBBEE. Laurens Superior Court. January Term, 1886.

Reported in the decision.

W. A. LOFTON; HIGHTOWER & FELDER; HINES & ROGERS, for plaintiff in error.

JOHN M. STUBBS; D. M. ROBERTS; A. F. DALEY, for defendant.

HALL, Justice.

This was a statutory action for the recovery of a plantation containing a number of lots of land in the county of Laurens; which, it was alleged, had been sold by Blackshear to Page. The abstract of title appended to this action shows that the plaintiff had more than twenty years' possession as legatee or devisee, under the will of the plaintiff's father, prior to the time of Page's entering into possession of the same. On the trial of the case, this state of facts was developed: In 1875, Blackshear was very much involved in debt, and was indebted, among others, to J. W. Lathrop, of the city of Savannah, in a large amount. Lathrop had reduced his debt to judgment in the Circuit Court of the United States, and was about to levy upon Blackshear's land to realize his money. Blackshear applied to Page and Hicks to take up this judgment, and they consented to do so if he would make them each an absolute deed to half of the land, which was to operate as security for the payment of the debt. In June, 1875, they took up the execution, and the contract in reference to the deed was thereupon carried into effect. The deed executed by Blackshear to Page was for half of this land, consisting of between 2,200 and 3,000 acres of land. It was admitted that in its origin this deed was held merely as security for the payment of the portion of the debt due to Page. Blackshear remained in

possession of the land the balance of the year 1875, until 1878, when he allowed Page to take possession of the portion deeded to him, with the understanding that the use of the land for that year should go in payment of the interest on the debt due by him to Page. Page held up that arrangement during the year 1878. Early in 1879, these parties met together and had an adjustment of their affairs. It seems that Cicero S. Guyton had a claim in judgment against Blackshear, amounting to the sum of $850, and which, at Blackshear's instance, Page and Hicks paid. Then, as they alleged, he agreed to relinquish his right to redeem this land, and he put Page in possession as owner of the portion of the land formerly conveyed by deed to him, and Hicks in possession of the part formerly conveyed to him by the deed. Upon the introduction of this deed in reply to Blackshear's claim of title, Blackshear attacked it upon two grounds, insisting that it was usurious in its origin, and that from long indulgence on his part in the use of opium and whiskey, his will power had become impaired, and that in aid of this transaction, Page brought whiskey to Blackshear's house, and that he indulged in it and was not at himself when the settlement was made. This arrangement, however, was acquiesced in for nearly three years, after this final settlement was made, before this suit was instituted.

The evidence leaves it very doubtful whether there was usury in the transaction at its inception. It also leaves in doubt Blackshear's incapacity, from intoxication, or stupor from the use of opium, to transact business on the day the final surrender was made. On both these points the testimony was conflicting. There was probably evidence enough to have justified the jury in finding as they did, and to have sustained the judge's refusal to disturb the verdict upon either of these grounds. After the evidence was introduced, Page filed an equitable plea, insisting that if the issues thus raised were found against him, Blackshear should account to him for the money he had ad-

vanced, with the interest thereon, he offering to credit him with what he had received in money and rents. There was proof on the trial as to the value of the rents. Page offered to show what he had actually received for rent during the time the land was in his exclusive control, and this offer was objected to, and the evidence repelled by the court. He offered further to show that he used every exertion to get all that the land was worth; and this was likewise objected to and rejected. He had previously shown that he was compelled to erect buildings, dig wells and put up a large amount of fencing to protect the crops. Upon the rejection of this evidence by the court error is assigned; and this makes the only question in the case seriously insisted upon by his counsel before this court.

We think this evidence was admissible. Had Page been an ordinary mortgagee, that is, in the sense of the term as generally understood, and gone into possession as such, then the rule of accountability for rents received by him, as laid down in the authorities, is this: "A mortgagee in possession under an ordinary mortgage, although liable to account for the rents, is not obliged to account according to the actual value of the land, nor is he bound by any proof that the land is worth so much, unless it can be proved that he made so much out of it, or might have done so but for his own wilful default, as, if without cause he turned out a sufficient tenant who held it at so much rent, or refused to accept a tenant who would have given so much for it. This limited protection accorded to the mortgagee is so accorded to him, because it is the *laches* of the mortgagor that he lets the land lapse into the hands of the mortgagee by the non-payment of the money; therefore, except as above mentioned, when the mortgagee enters, he is only accountable for what he actually receives, and is not bound to take the trouble of making the most of another's property, and above all, the mortgagee is not bound to work or keep working at a speculative profit the

minerals in the land mortgaged." Snell's Equity, p. 308. See also Coote on Mortgages, 18 Law Lib. top p. 152, marginal, 355 ; 2 Jones on Mortgages, 1123 ; 1 Ala. Rep. 496; 26 Gratt. 61 ; 78 N. Y. 556 ; English Notes to Thornburg *vs.* Baker, 2 W. & T. Lead. Cases, Part II, 1979, top, 1077.

This is in the case of an ordinary mortgagee, but a different and more liberal rule prevails where the mortgagee has gone into possession under the impression that the equity of redemption has been barred.

In this case there is a further question which may entitle Mr. Page, even if he should be held to be simply a mortgagee, to more favorable consideration. He went in there by the consent of this party, under the impression, according to his account of this matter, that he was the actual owner of this land. He was using it in that way and was permitted to use it in that way. It certainly was not fraudulent to go into possession under a deed which was merely infected with usury ; and unless he got Blackshear drunk or partially so for the purpose of securing this end and obtaining his land at an undervaluation, it would seem that he might not be held accountable for rent at all. We do not, however, decide that question, but merely refer to the case of Harper's Appeal, 14 P. F. Smith's Rep. 315, in which it is very fully discussed by Sharswood, J., and which is well worth consideration, because it gives all the learning on this subject in all the aspects in which it can be considered. It is a leading and celebrated case ; and he gives the rule as we have laid it down here. On this ground, and this ground alone, viz. the rejection of this testimony, the judgment of the court below is reversed.

BLECKLEY, Chief Justice, concurring.

In order to prevent any misapprehension hereafter with respect to the exact bearing of the decision in this case, I wish to explain that it does not involve any holding that

this deed, if infected with usury, would be available as a mortgage. The ruling touching the measure of accountability for rent, as I concur in it (and I understand this to be the view of the whole court), is, that Page, having been put in possession with some reference to this debt, either to hold the land with the debt open, or to hold it in payment of the debt, is at least entitled to the position of a creditor in possession. If the deed is not effective, then he can, in accounting for rents, fall back upon his bare possession, that possession having been acquired originally as creditor, and with the debtor's consent. It did not need either a conveyance or a mortgage to support it and give it character; all it needed was a debt and the consent of the debtor.

After the conclusion of the concurring opinion of BLECKLEY, C. J., Justice HALL added:

I should have stated that, taking for the plaintiff the most favorable view of the case made by him, he is in the position of a party whose weakness has been taken advantage of by shrewd traders. He can rescind this contract and have an account taken, and it would perhaps have been better for him to have resorted in the first instance to a court of equity, in which all the rights of the parties could have been adjusted. He has sought equity, and he ought to be made to do equity; he ought to be treated exactly as if he were in a court of equity; and if, upon this settlement that is to take place, the deed should be found to be usurious, or if it was obtained by artifices or fraudulent practices, it should be rescinded; and in that event, there should be a settlement of mutual accounts between the parties upon equitable principles. That is all I meant to say as to this question of equitable mortgage in connection with this decision. I did not intend, and do not now, to enter into a consideration of that question.

Judgment reversed.