ROSE M. PALMER and LILLIAN PALMER, Plaintiffs, *v.*
ROTARY REALTY COMPANY, INC., SAMUEL COHN and
ALEXANDER HOLMAN, Defendants.

(Supreme Court, Kings Special Term, December, 1919.)

Deeds — when plaintiffs entitled to maintain an action to have a
deed declared a mortgage — mortgages — contracts — evidence
—title.

Where a grantee, after receiving a deed which though abso-
lute in form was given as security for a mortgage indebtedness,
evades performance of his oral promise made before the execu-
tion of the deed to give a defeasance, equity will grant relief
on the theory that the deed was intended as a mortgage with
the consequent right in the grantor to redeem.

The father of plaintiffs, to secure the payment of his bond
for $8,000, gave a second mortgage upon certain premises
which he had previously conveyed to the mortgagee, and plain-
tiffs became the owners of the property under a deed recorded
in the year of their father's death. The mortgage, to the extent
of $1,100, was assigned to defendant H., who assigned his
interest in the mortgage to the defendant realty company,
which by further assignment acquired the whole mortgage.
Thereafter, by an agreement entered into between the realty
company and H. and the grantee of plaintiffs, which recited
that there was then due upon the mortgage $6,000 and interest
from a certain date, the time for the payment of the principal
was extended one year, and nearly two years thereafter the
defendants demanded payment from plaintiffs of the balance
due on the mortgage and they being unable so to do acceded
to the demand of defendants for an absolute conveyance of the
title to the property upon their oral promise to execute and
deliver to plaintiffs, at the time of such conveyance, a writing
embodying an agreement on the part of defendants to control
and manage the property and at such time as the net rents
should become sufficient to pay the second mortgage and in
any event within five years to reconvey the property to plain-
tiffs upon receipt of a sufficient amount to cancel the mortgage.
Plaintiffs gave the deed in suit to the realty company subject

to the first and second mortgages, and made frequent demands upon defendants to fulfill the oral agreement. *Held,* that plaintiffs were entitled to maintain an action to have the deed declared to be a mortgage, the facts having been found in their favor though upon conflicting evidence.

The father of plaintiffs and his estate, if he had any, were released from liability on his bond for $8,000 at the time when the agreement for the extension of the time for the payment of the principal of the second mortgage was made.

Action to have a deed absolute on its face declared to be a mortgage.

Rose M. Palmer (Joseph J. Schwartz, of counsel), for plaintiffs.

Bernard H. Arnold, for defendants.

Benedict, J.   In this action it is sought to establish that a certain deed of real property made by the plaintiffs to the defendant Rotary Realty Company, dated October 16, 1914, was intended as a mortgage, although by its tenor it was an absolute conveyance. The following facts I deem to be established by the evidence:

The real property in question, which consisted of a double apartment house situated on the southerly side of the Eastern Parkway Extension in the borough of Brooklyn, being 40 feet in width in front and rear by 110 feet in depth on each side, was, in February, 1908, owned by Raphael D. Palmer, the deceased father of the plaintiffs.   On February 1, 1908, in order to secure the payment of his bond for $8,000, with interest at six per cent per annum to one Joseph Friedkin, he, with his wife, Adeline, executed a second mortgage, dated on that day, to said Friedkin covering the said premises. The principal of the bond became due on the 1st day of February, 1909.

Raphael D. Palmer died in the year 1913.   In his

lifetime, by deed dated April 20, 1907, he had conveyed the property to Joseph Friedkin. This deed was recorded August 6, 1908. Joseph Friedkin, by deed dated and recorded October 11, 1909, conveyed the property to Pauline V. Bernstein, and Pauline V. Bernstein, by deed recorded October 23, 1913, conveyed the property to the plaintiffs.

The second mortgage above referred to was assigned by Joseph Friedkin to the defendant Samuel Cohn by assignment recorded February 21, 1908. It was further assigned by the defendant Cohn to the defendant Holman to the extent of $1,100 by assignment recorded April 21, 1908. Holman's interest in said mortgage was assigned to the Rotary Realty Company by assignment recorded December 3, 1913. The mortgage was further assigned by Samuel Cohn to the Light Machine Company by assignment recorded April 4, 1910. It was further assigned by the Light Machine Company to Rosie Cohn by assignment recorded on April 11, 1910. It was further assigned by Rosie Cohn to the Rotary Realty Company by assignment recorded on April 11, 1910.

By an agreement dated on January 24, 1911, between the Rotary Realty Company and Alexander Holman of the first part and Pauline V. Bernstein of the second part, which recited that there was then owing for principal of the said mortgage the sum of $6,000, with interest from August 1, 1910, the time for the payment of the principal indebtedness was extended for one year, that is, until February 1, 1912. No further extension of the time for the payment of the principal of said mortgage was given.

After the death of Raphael D. Palmer and after the title to the real property had become vested in the plaintiffs, the defendants, early in October, 1914, demanded payment from the plaintiffs of the balance

28

due on the said mortgage. The plaintiffs' contention
is that the defendants, in order to have absolute con-
trol of the property, insisted upon the execution by
them of a deed conveying title to the property to the
Rotary Realty Company. This corporation was, at
that time, owned by the defendant Cohn, who was its
president and treasurer, the defendant Holman being,
or having shortly theretofore been, its secretary. The
plaintiffs, being unable to pay the principal of the
mortgage, acquiesced in the demand of the defendants,
upon the condition, as they claim, that the defendants
would take control of the property and manage it, col-
lecting the income and paying the carrying charges,
and at such time as the net rents should become suffi-
cient to pay off the mortgage, and in any event not
beyond five years from that time would reconvey the
property to the plaintiffs upon receipt, either from the
net rentals of the property or from the plaintiffs them-
selves, of a sufficient amount to cancel the said
mortgage.

The plaintiffs testify that this arrangement was
acceptable to the defendants Cohn and Holman, and
that the defendants promised to execute and deliver
to them, at the time of the making of the conveyance,
a paper which should embody the said arrangement.
They further contend that, on October 21, 1914, the
defendants obtained a deed from them conveying their
title to the premises in question to the Rotary Realty
Company, subject to the first mortgage for $22,000
and to the second mortgage then held by the said
Rotary Realty Company. They say further, at fre-
quent intervals thereafter, they asked the defendants
to fulfill the agreement which was made, and that
finally they were forced to begin the present action.

The defendants deny both the alleged fraud in
obtaining the deed and also deny that there was any

agreement, oral or in writing, under which they took the deed of the property in question.

If the plaintiffs are correct in the theory of this action, namely, that prior to the giving of the deed the defendants agreed to give them a defeasance, they are entitled to maintain this action, because it is well settled that, although a mere oral promise or agreement to give a defeasance, if made at the time of the execution of the deed and not performed, will not make the transaction a mortgage, yet if the grantee give such a promise *before the making* of the deed, and evades its performance after receiving the deed, equity will relieve against the fraud and enforce the agreement. 27 Cyc. 1001; citing *Peck* v. *Baldwin,* 1 Root (Conn.), 455.

The plaintiffs contend that this was the situation here, and that they have been defrauded out of their property because the defendants induced them, upon the strength of such promise, to part with the title to their property. I may say in passing that, even without any fraud such as the plaintiffs allege, if it were the agreement between the parties that the deed was to be given as security for the debt and not as an absolute conveyance, it would be considered as a mortgage with the consequent right in the grantor to redeem, even though the provision for defeasance was not reduced to writing but rested wholly in their verbal agreement. See 27 Cyc. 1005, and cases cited in notes.

In *Horn* v. *Keteltas,* 46 N. Y. 605, the Court of Appeals said: "It is now too late to controvert the proposition that a deed, absolute upon its face, may, in equity, be shown, by parol or other extrinsic evidence, to have been intended as a mortgage; and fraud or mistake in the preparation or as to the form of the instrument is not an essential element in an action for relief, and to give effect to the intention of the parties."

And the same doctrine is recognized in many other cases. See *Morris* v. *Budlong,* 78 N. Y. 552; *Ensign* v. *Ensign,* 120 id. 656; *Kraemer* v. *Adelsberger,* 122 id. 476; *Barry* v. *Colville,* 129 id. 306; *Macauley* v. *Smith,* 132 id. 531; *Burnett* v. *Wright,* 135 id. 547; *Mooney* v. *Byrne,* 163 id. 91; *Reich* v. *Dyer,* 180 id. 113. The doctrine is well established by these cases that the real question to be determined in such an action is whether the conveyance was intended to be absolute or whether it was given as security. If the latter, then no matter what form the transaction took or how binding and formidable were the documents employed to make it appear that the transaction was an absolute conveyance, the court is bound to look beyond the form and ascertain what was the real agreement and true intent of the parties to the transaction. Of course, in any case where it is sought to overthrow the effect of a formal deed, the evidence ought to be very clear and convincing before the court will hold that it does not mean what it says. And the burden naturally rests upon the persons who assert such to be the fact to prove the claim by a clear preponderance of the evidence. If, however, the court, upon conflicting evidence, reaches the conclusion either that the real agreement of the parties was that the deed should operate as a mortgage and not as an absolute conveyance or that the grantee, having obtained the deed through fraud or deceit by promise to give a defeasance, such a finding of fact, if there be any evidence to sustain it, will not be disturbed by the Court of Appeals. *Ensign* v. *Ensign, supra.*

It has been said, and I think there is force in the statement, that where a deed, absolute in form, is given in consideration of an existing mortgage indebtedness, the court is more inclined to treat it as a mortgage than one given upon an original advance, and when so given

the new mortgage will not be regarded as a substitute for the former security, unless the intention to that effect is manifest. See *Bearss* v. *Ford,* 108 Ill. 16. In the case at bar, no monetary consideration passed from the grantee in the deed to the plaintiffs at the time of the transfer. The grantee did not even satisfy the mortgage upon the record, and apparently it is still outstanding thereon.

The defendants contend that they gave valuable consideration for the deed, and they endeavor to support that contention by proof of the execution and delivery to some person, whose identity was not very clearly shown, of an instrument of release bearing date on the 21st day of October, 1914, whereby they released the estate of Raphael D. Palmer and Pauline V. Bernstein from any liability upon the bond for which the $8,000 second mortgage was given as security. So far as the plaintiffs are concerned, however, I doubt whether this release, if it were in fact executed, had any force or effect. They were not the representatives of the estate of their father, nor were they personally liable upon the bond in question. It is not shown that they requested the release by the Rotary Realty Company for the benefit of Pauline V. Bernstein.

So far as their father's estate is concerned, if there be any such entity in the law, I think it is very plain that Palmer and his estate, if he had any, were released from liability on his bond at the time when the Rotary Realty Company and Alexander Holman, on January 24, 1911, gave an extension to Pauline V. Bernstein of one year for the payment of the principal of the mortgage. See Thomas Mortgages (3d ed. p. 184), where the following statement is made: " Where the grantee has not personally covenanted to pay the mortgage, the conveyance being made merely subject to it, the mortgagor has also been held to be discharged by such

an extension on the ground that, although no technical relation of principal and surety exists between the mortgagor and his grantee, still, as the land is the primary fund for the payment of the debt, in respect thereto and to the extent of its value the grantee stands in the relation of a principal debtor, and the grantor has an equity similar to that of the surety.'' Citing *Spencer* v. *Spencer,* 95 N. Y. 353; *Murray* v. *Marshall,* 94 id. 611, and other cases.

The defendants also endeavor to show consideration for the conveyance to the Rotary Realty Company by attempting to prove that it had granted an extension for the time of the payment of the principal of a second mortgage upon the property adjoining that which is the subject of this action. But it is not shown that the plaintiffs requested any such extension, nor that it inured to their benefit, nor that they were the owners of such adjacent property.

In support of the claim of the plaintiffs that they were tricked into making the deed conveying their equity in the property in question, we have the positive assertions of both the plaintiffs and also of their mother that the deed was given merely as security for the debt owing to the defendant Rotary Realty Company, and that the defendants had obtained the deed by their previous promise to reconvey the property in the manner hereinbefore mentioned. In addition to their testimony, we have the testimony of Mr. Tager, who appears to have been a disinterested witness and who made a favorable impression upon the court by his testimony. He had, in one transaction, been a business associate of the plaintiffs' father, and he testified to admissions made to him by the defendant Cohn which tended strongly to support the plaintiffs' contention. There were other circumstances in the case which, taken separately, might not appear to be

of importance, but which, taken in connection with the entire evidence, tend to corroborate the plaintiffs.

One such item of evidence is furnished by an exhibit which the defendants produced. This was an income tax return for the fiscal or calendar year ending December 31, 1914. That paper would indicate that the defendant Cohn had received interest upon the mortgage in suit for the entire year 1914. I think the inference may be drawn from this statement that when he made the income tax return he regarded the mortgage for $6,000 as having borne interest up to December 31, 1914, notwithstanding the grant to the Rotary Realty Company, and that, in addition to having received the full interest for the entire year upon the mortgage, he had received rents from that property amounting to $477.40.

The plaintiffs' evidence is, it is true, contradicted by the defendants and by their attorney in the original transaction, Mr. Adams, but I am not inclined to give the statements of Mr. Cohn their full face value in view of his demeanor on the witness-stand under cross-examination.

Upon the whole case, therefore, I have reached the conclusion that the plaintiffs have sustained the burden of proof resting upon them, and I find the facts in issue in their favor and decree that an interlocutory judgment be entered declaring that the deed in question was intended as a mortgage; that it was and still is a mortgage; that it was obtained from the plaintiffs by the fraudulent representations and promises of the defendants; that, in order to ascertain what sum is now due upon the mortgage, the defendants shall account before a referee to be appointed in the interlocutory judgment as to all moneys received by them from the property since October 21, 1914, and as to all moneys paid out by them upon the property; and

that, upon the coming in of the referee's report, a final judgment be entered which shall provide, unless the plaintiffs shall, within a time to be specified therein, redeem from said mortgage by payment of the principal and interest so found to be then due, the defendant Rotary Realty Company may foreclose the equity of redemption of the plaintiffs in the real property in question by action.

The final decree will also award the plaintiffs, as against the defendant Rotary Realty Company, the costs of this action to be taxed, together with an additional allowance of five per cent upon the amount found due; such costs and allowance to be credited upon the sum so found due to the defendant Rotary Realty Company.

Ordered accordingly.