RUDOLPH NIGGELER *vs.* PETER MAURIN and another.

August 14, 1885.

**Equitable Action—Effect of Verdict on Specific Questions.**—The verdict of a jury upon specific questions of fact submitted for its determination in an equity action, under the practice prevailing in this state, is binding upon the court and parties until vacated or set aside. *Marvin* v. *Dutcher,* 26 Minn. 391, followed.

**Mortgage—Title Acquired under Contract of Sale—Conveyance of Legal Title to Mortgagee.**—A vendee of lands under a contract of sale has an interest capable of being mortgaged; and where he conveys or assigns such interest to a third party to secure him for money to be advanced to pay the amount due the vendor, who thereupon conveys the legal title to such party, the latter will be adjudged to hold such title as security merely, and the transaction, as between him and the original vendee, will be treated as a mortgage.

**Same—Absence of Personal Liability of Mortgagor.**—It is not necessary, in order to constitute it a mortgage, that there should be any prom-

ise by the mortgagor to repay the amount so advanced, or that the personal remedy be preserved. The mortgagee may rely wholly upon the security.

**Same—Conditional Sale—Evidence.**—The absence of a personal covenant or promise to repay is a material circumstance in determining whether a mortgage or conditional sale is intended, but is not controlling on the question.

**Same—Conditional Sale.**—In doubtful cases the transaction will ordinarily be construed to be a mortgage rather than a conditional sale, to save forfeiture.

**Same—Second Conveyance to Mortgagee.**—A second or further conveyance, growing out of a prior mortgage, or taken in virtue of that relation, cannot be set up to bar a redemption.

**Same—Mortgagor's Legal Title, how Divested.**—A mortgagee in this state, whatever the form of the instrument creating the security, has before foreclosure a lien only, and is not invested with the legal title; hence the mortgagor's interest can only be divested by a release properly executed, unless the circumstances are such as to constitute an equitable bar or estoppel.

**Same—Consideration for Release of Title by Mortgagor.**—A release or settlement set up in bar of the mortgagor's equity of redemption must be fairly obtained; and when the debtor is influenced by the pressure of needy circumstances, the consideration allowed must appear to be just and equitable. Any arrangement between the parties under which the creditor secures the property for himself at less than its value, through an advantage which his position as mortgagee enables him to take of the necessities of the mortgagor, is liable to be set aside or adjudged void.

Appeal by plaintiff from a judgment of the district court for Otter Tail county, where the action was tried before *Collins, J.*

*Baxter & Rawson,* for appellant.

*Chas. D. Kerr, John W. Mason* and *Williams & Chapman,* for respondents.

VANDERBURGH, J. On the sixth day of August, 1878, the plaintiff held a bond for a deed, made to him by one Peter Brayley, by which the latter had bound himself to convey the 80-acre tract of land described in the complaint, and which included the town-site of Elizaabeth, in the county of Otter Tail. The purchase price of the land, then amounting to upwards of $600, was overdue, and the plaintiff

was unable to raise money to pay the same, but was desirous of making some arrangement by which he might be enabled to hold the land, and ultimately pay therefor by sales of lots or otherwise. For that purpose he had previously been in negotiation with the defendant Peter Maurin in respect to the claim of Brayley, which at that date resulted in a transfer of plaintiff's equitable title to him, in the form of an absolute deed of quitclaim, and in the payment by the defendant of the debt to Brayley. The latter thereafter conveyed the legal title to the defendant, who thereupon went into possession of the premises, with plaintiff's knowledge and consent, and still occupies the same. This transfer by plaintiff, though absolute in form, it is claimed was in fact made as security for the money so advanced by Maurin to pay the debt to Brayley, and that the transaction was in the nature of a mortgage, and not a sale. It is clear enough that the object of such transfer by the plaintiff was to raise money to satisfy the debt due Brayley, according to the conditions of his bond, and that the deed from the latter to Maurin followed as a part of the transaction. The defendants deny that the transaction was a mortgage, but allege that it was a conditional sale, the terms of which plaintiff failed to comply with, and, being unable to do so, prior to this action fully settled with the defendants the controversy in relation to his equity in the land by accepting a deed of certain lots in the same town-site. This presents substantially the issue between the parties.

1. Upon this issue the special verdict of the jury is conclusive for the purposes of this appeal. It finds that plaintiff's deed was executed to defendant as security, and, not having been set aside or vacated, necessarily controlled the determination of that question in the trial court. *Marvin* v. *Dutcher*, 26 Minn. 391.

But it is proper to observe, while not considering the question of the preponderance of the evidence on this issue, that the record discloses sufficient evidence to support the finding. The testimony of the plaintiff in his own behalf tended to prove that the conveyance was intended as security. It shows that he informed defendant that he was anxious to hold the land as long as he could, and to raise money to enable him to do so, and that defendant thereupon offered

to take the land into his own hands and pay the debt due upon it, and whenever plaintiff paid the money so advanced, and a store bill amounting to about $100, the plaintiff could redeem it. Also that he (the defendant) offered him very favorable terms of payment. "He said he would do by me just as he would by his father, and that he would give me back the property any time I wanted it, by paying him what money he had in it, and he would collect the money that was standing out on lots that had been sold, and would give me credit for it, and as soon as he got his money out of it he would deed the land back to me. He said he would attend to it just the same as if I was his own father." His evidence tends to show that defendant proceeded to make sales and collections accordingly; that he consulted plaintiff in reference to sales; and that two years afterwards he notified plaintiff that the balance then due, everything included, was $358. Under all the circumstances the question was fairly for the jury whether the arrangement between the parties was not intended to be in the nature of a mortgage, rather than a sale and an agreement for a resale. See *Morris* v. *Budlong*, 78 N. Y. 543, 552; *Roach* v. *Cosine*, 9 Wend. 227.

It was not necessary, in order to make the transaction a mortgage, that there should be any promise or personal covenant to repay the amount due Maurin. The mortgagee may rely wholly upon the security. *Madigan* v. *Mead*, 31 Minn. 94; Gen. St. 1878, *c.* 40, § 6; *Fisk* v. *Stewart*, 24 Minn. 97; *Matthews* v. *Sheehan*, 69 N. Y. 585. It is an important circumstance to be considered in determining whether a mortgage or conditional sale is intended, but it is only one of the circumstances to be considered, and is not controlling. *Horn* v. *Keteltas*, 46 N. Y. 605. If it was the intention of the parties that the land should be held as security by defendant, his advance to Brayley of the amount due him in pursuance of the understanding of the parties constituted a debt in equity sufficient to support the character of the transaction as a mortgage. It was not essential that the money should pass through plaintiff's hands. *Roach* v. *Cosine*, 9 Wend. 227; *Hoile* v. *Bailey*, 58 Wis. 434, 448. Men in necessitous circumstances, with no personal responsibility apart from the security offered, and especially if unused to business, are not always care-

ful as to the form of the security or terms imposed, particularly where confidence is reposed in the creditor. And the latter may choose, for reasons of his own, to exact a title absolute in form, without any personal obligation from an impecunious debtor. *Russell* v. *Southard*, 12 How. 139, 152. In *Holmes* v. *Grant*, 8 Paige, 243, 251, Denio, V. C., says: "It is not essential that the personal remedy against the mortgagor be preserved. There is a debt *quoad* the redemption, but not in respect to the personal remedy." There is mutuality of remedy in this: the one can redeem by paying or discharging the debt or obligation for which the security is given; the other can foreclose, and appropriate the property or proceeds to the same end.

In doubtful cases a contract will ordinarily be construed to be a mortgage, rather than a conditional sale, because in the former case the right of redemption remains, though the terms of the mortgage be not strictly complied with, while in the latter strict compliance is required to save a forfeiture. *Matthews* v. *Sheehan*, 69 N. Y. 585; *Locke* v. *Palmer*, 26 Ala. 312, 322; *Horn* v. *Keteltas*, 42 How. Pr. 138, and cases cited page 149; *Brown* v. *Dewey*, 2 Barb. 28.

2. Plaintiff, being vested with the equitable title to the land, had an interest capable of being mortgaged,—*Randall* v. *Constans*, 33 Minn. 329; *Sons of Temperance* v. *Brown*, 9 Minn. 144, (157,)—and if the relation of mortgagor and mortgagee was established between the parties, it continued and was not altered by the acquisition of the legal title from Brayley. It is entirely immaterial, under such circumstances, whether the trustee of the legal title should convey to the mortgagee directly by the arrangement of the parties, or that it should pass to him through the mortgagor. *Stoddard* v. *Whiting*, 46 N. Y. 627. Although not in entire harmony with the theory of the complaint, it is clear from the evidence and findings, as before indicated, that the arrangement between the parties contemplated the procurement of the legal title from Brayley, by defendant, as a part of the transaction. It was necessary to prevent a forfeiture of plaintiff's rights, and at the same time to protect and fortify the interest acquired by defendant under the transfer from plaintiff. But it did not merge the agreement with plaintiff; it was rather in further-

ance of it, and was necessary to its fulfilment. If the contract between them was a mortgage, it remained such; if it was a conditional sale, such continued to be its character; and this, as we have seen, is the real issue. The groundwork of the redemption or repurchase by plaintiff would be the reimbursement of the amount paid Brayley, and the acquisition of a perfect title. A second or further conveyance, which springs out of or is connected with a prior mortgage, cannot be used to prevent a redemption. *Holridge* v. *Gillespie*, 2 John. Ch. 30. See *Murray* v. *Walker*, 31 N. Y. 399. An arrangement between the parties that the defendant, having the apparent or formal legal title, should make sale and apply the proceeds on his claim, was of course entirely consistent with the mortgage relation between the parties. And where a portion has been sold, the mortgagor may bring his bill to redeem the balance.

3. Assuming, then, as we must from the verdict, that the relation of mortgagor and mortgagee was established between the parties, we are next to consider the question whether the equity of redemption has been barred or released by the plaintiff. As respects the interest of defendant Marcus Maurin in the premises in controversy, it is sufficient that it is found that he took with notice of the nature and circumstances of the transfer of plaintiff's interest to the defendant Peter.

The court finds that on the 18th day of June, 1881, the defendants made a settlement with plaintiff of and concerning all his claims to the land in controversy, and in full satisfaction thereof conveyed to plaintiff's wife, at his instance, a part of two blocks, parcel of the same land, in consideration of the sum of $50 paid by plaintiff. The value of the lots conveyed does not appear and is not found. No written release of his interest in the land was made by plaintiff. In this state a mortgagee has a lien only, and is not vested with the legal title, whatever the form of the instrument creating the security; and though the legal title appeared to be in Maurin, yet, being merely a mortgagee, he had no title, right, or remedy other than the law accords to mortgagees. Plaintiff's interest in the premises could therefore only be divested or barred by release properly executed, unless the circumstances in the case were such as to constitute an equitable

bar in the nature of an estoppel. And where a release or settlement is set up as a bar, it must also appear to have been fairly made, not unconscionable, and be free from fraud, actual or constructive. *Hoile* v. *Bailey*, 58 Wis. 434, 448; *Meighen* v. *King*, 31 Minn. 115; *Odell* v. *Montross*, 68 N. Y. 499; *Peugh* v. *Davis*, 96 U. S. 332.

There being no release, it remains simply to consider the finding of the court that the settlement was made in good faith, and fairly, and without oppression, and that the same was therefore an equitable bar to plaintiff's title or equity of redemption. The court also finds that it was made at the suggestion of the plaintiff; that the defend. ants have since continued in possession, have made improvements and effected sales with the knowledge of plaintiff and without objection by him.

Upon a careful examination of the record, we do not think the evidence establishes a lawful and valid settlement sufficient to bar plaintiff's interest in the premises as mortgagor. It was simply a parol agreement to surrender all his right, title, and interest in the entire mortgaged premises by a person in straitened circumstances, in consideration of the conveyance of a fraction of the property, a few village lots, presumptively of small value, actual or relative.

In *Ford* v. *Olden*, L. R. 3 Eq. Cas. 461, 463, it is said by the court: "A mortgagor may be a man of wealth, and in a situation to make any contract he pleases with the mortgagee; but the principle upon which the courts act is not that the mortgagor is unable to enter into a contract of this kind, but that the transaction ought to be looked upon with jealousy, especially where the mortgagor is a needy man, and when there is pressure and inequality of position, and the sale has been at an undervalue." And, speaking of such cases, the chancellor says, in *Holridge* v. *Gillespie, supra:* "Contracts made with the mortgagor, to lessen or embarrass the right of redemption, are regarded with jealousy, as they are very apt to take their rise in unconscientious advantages assumed over the necessities of the mortgagor; and though, no doubt, the equity of redemption may be released upon fair terms, yet the fairness and value must distinctly appear." In *Baugher* v. *Merryman*, 32 Md. 185, 192, the rule is stated as follows: "Unless the transaction appears to be fair, and unmixed

with any advantage taken by the mortgagee of the necessitous circumstances of the mortgagor, equity will hold the parties to the original relations of debtor and creditor." In *Linnell* v. *Lyford*, 72 Me. 280, 283, the court say : "A subsequent release of the equity may undoubtedly be made to the mortgagee, but the transaction will be closely scrutinized to guard the debtor from oppression. The release, too, must be for a new and adequate consideration." In *Odell* v. *Montross, supra,* Judge Allen says : "It will be sustained only when *bona fide;* that is, when in all respects fair, and for an adequate consideration." So in *Peugh* v. *Davis,* 96 U. S. 332, it is held that the release must be in writing, or the circumstances must be such as to work an estoppel as against the mortgagor, and that the release must also be for an adequate consideration. *Villa* v. *Rodriguez,* 12 Wall. 323 ; 2 Lead. Cas. Eq. (4th Ed.) 1984.

While we do not deem it necessary in this case to formulate or adopt any abstract general rule in reference to the necessity for an adequate consideration to support a release made to a mortgagee, it is manifest the amount or value of the consideration received must ordinarily be an important element in determining the question of the fairness and validity of the transaction; and where the debtor is unable to redeem, and is practically obliged to submit to such terms as the creditor may dictate or consent to, any arrangement will be liable to be set aside or adjudged void under which the creditor would secure the property for himself at less than its value, through an advantage which his position as mortgagee thus enables him to take of the necessities of the mortgagor.

The circumstances of the alleged settlement, as made to appear by defendant's own evidence, are not such as to entitle it to the favorable consideration of the court. It is not necessary that there should be actual fraud or deceit; it is sufficient that there is constructive fraud, or an unconscientious advantage taken, which ought not to be retained. *Russell* v. *Southard, supra.* The plaintiff had reposed special confidence in the defendant in the arrangement made by which he became possessed of the property. The apparent legal title and actual possession were in the latter, and the former had no written obligation defining his rights. He was anxious to redeem and hold the

property, but he had been unsuccessful in his efforts to raise money to effect a redemption, and was poor and in debt, all of which defendant knew. In the mean time a railroad had been projected and built to the village, and the property was increasing in value. In the spring and summer of 1881 defendant was pressing for a settlement, and the parties were conferring, from time to time, about plaintiff's redemption. Defendant testifies that in March plaintiff told him he would redeem it back as soon as he got some money from property he had sold. "About a month or two after that I asked him again; he said he had not got any money. Some time in 1881, it might be in June or July, he came into the store, and I told him I wanted the thing settled. He said, 'I do not believe I will be able to redeem the land;'" and thereupon defendant says he, the plaintiff, proposed to take a deed for the two blocks in settlement, which were accordingly conveyed, less some lots previously sold.

The plaintiff in the mean time lived in the town of Breckenridge, in a neighboring county. Defendant had been making sales of lots which it seems had not been fully paid for, and it does not appear that plaintiff knew the value of the mortgaged property. The deed to plaintiff was made June 18, 1881, and it appears from the stipulation of the parties that between July 1, 1881, and September 1, 1882, the defendant realized from sales made of certain portions of the mortgaged property the sum of $3,379, and the sum total expended by him, including taxes and the amount paid Brayley to the last named date, is $809. In respect to the expenditures of defendant—improvements mentioned in the findings—to the amount of about $400, it is not found when they were made nor in what they consisted. But the evidence shows that they consisted chiefly of fencing built around pasture land. No buildings were erected, and it does not appear that the alleged improvements were made after the settlement. Sales were contemplated, and of course purchasers would be protected.

The facts in this case, we think, therefore, constitute no estoppel against plaintiff's right to question the sufficiency of the settlement, and his alleged acquiescence and delay, under the circumstances, are not such as to bar him out of a court of equity. No doubt, as is not

unfrequently the case, the poverty of the party and his ignorance of his legal rights prevented him from an earlier assertion of them. *Russell* v. *Southard, supra; Holmes* v. *Grant*, 8 Paige, 243, 251.

Judgment reversed and cause remanded, with directions to render judgment for the plaintiff.