WILLIAM R. MARSHALL *vs.* HORACE E. THOMPSON and others.

August 28, 1888.

| 39 | 137 |
|----|-----|
| Case 2 | |
| 86 | 261 |

Mortgage—Conveyance of Legal Title to Mortgagee.—Where the relation of mortgagor and mortgagee is once established, any transfer to, or arrangement for the acquisition of the equity of redemption by, the mortgagee without a foreclosure is regarded with jealousy, and carefully scrutinized by the courts.

Same — Such Conveyance regarded as Further Security.— Any additional conveyances exacted or secured by the mortgagee for his benefit will ordinarily be regarded as further security, or a new form of security, for the same mortgage debt, and will not extinguish the equity of redemption. The court will look through the form into the real character of the transaction.

Same — Deed by Mortgagor to Third Person as Trustee.—Whenever property is transferred, no matter in what form, if in reality as security

for the mortgage debt, the transfer will be treated as in effect a mortgage, and the relation of mortgagor and mortgagee be held to continue; and it is not material that a third person be made a trustee of the legal title as between the parties, and that new securities be substituted for the old, nor that any personal obligation of the debtor be preserved. The equity of the mortgagor will be recognized and protected.

Plaintiff brought this action in the district court for Ramsey county, in March, 1886, against the devisees of the late Horace Thompson, (who died January 28, 1880,) to have a certain deed bearing date November 15, 1876, from plaintiff to one William Fry adjudged to be a mortgage, and given as security for a debt then owing from plaintiff to Thompson, and for an accounting and redemption. The action was tried by *Brill, J.*, who ordered judgment for defendants, from which judgment the plaintiff appeals.

*Bigelow, Flandrau & Squires*, for appellant.

*Harvey Officer* and *Geo. B. Young*, for respondents.

VANDERBURGH, J.   It is admitted that the relation of mortgagor and mortgagee existed between the plaintiff and Horace Thompson, since deceased, on the 25th day of August, 1876, and that the plaintiff then held the legal title of the mortgaged premises, and that Thompson held a mortgage thereon to secure the note of plaintiff, then overdue, for $4,000, and interest at 10 per cent., upon which there was on that day a payment made of $1,000, derived from a sale of a portion of the premises. On the 15th day of November following there was found to be due thereon the sum of $3,200. The pleadings and records introduced in evidence show that the plaintiff executed a deed, with full covenants, of the lands in question, to one William Fry, the consideration named being $3,200, and that Fry executed a mortgage of the same land to Thompson to secure the same sum, with interest at 10 per cent., payable in three years, evidenced by his promissory note. These instruments are both in the handwriting of the plaintiff, and bear date November 15, 1876. On the 28th day of August, 1877, Fry, together with his wife, executed a quitclaim deed of the mortgaged premises to Thompson, and it appears by the defendants' evidence that Thompson surrendered Fry's note to him about a year later, and that subsequent to

the conveyance of Marshall, and prior to the execution of the quit-claim by Fry to Thompson, the latter had agreed to indemnify Fry against personal liability upon the note, and also upon certain conditions agreed to allow him profits upon the sale of the land, and to execute releases in case of sales. There is no evidence, however, in the case tending to show that Marshall knew of or consented to the surrender of the note to Fry, or to the agreement last referred to, to which, however, there is no reference in the findings of the court. The findings are not as full or specific as might be desired, but it appears thereby that the deed and mortgage first above named were executed in pursuance of the mutual agreement of the three parties, and the note of Marshall was thereupon surrendered up to him by Thompson; and there is no question upon the evidence that it was all one transaction. The general finding of the court "that the allegations in the pleadings, save as aforesaid, are not established," includes a finding upon the issues raised by the reply to the answer that Fry paid no consideration for the deed of plaintiff to him, and received none whatever from Thompson for the quitclaim deed executed to him, unless the subsequent voluntary surrender of his note, against which he was already indemnified, is to be treated as a consideration received. It is true, the court states that the new arrangement for securing Thompson by the deed to Fry and his mortgage was "in consideration of the satisfaction and surrender of said [Marshall's] note." If by this anything more than the cancellation and surrender of the note was intended, then it is so far entirely unsupported by the evidence, which shows that the new arrangement was a mere substitution of new securities for the same debt, made at Thompson's suggestion, to help Marshall, and to protect himself, and, as he supposed, to avoid the ultimate necessity of foreclosure. The pleadings admit that at the time of the execution of these instruments prices of real estate of this character in Ramsey county were much depressed, "and that it was generally regarded as impracticable at that time to dispose of such lands at anything like their fair value." And defendants' evidence showed that such depression continued until 1878, or later, in which year they also show that the plaintiff filed a petition in bankruptcy. The evidence also tended to

show that he was financially embarrassed from July, 1876, till 1879. In respect to the nature and purpose of the agreement referred to by the court, the evidence, which is entirely undisputed on this point, shows that plaintiff was unwilling to surrender his equity of redemption in the land, but did consent to the arrangement agreed on, being in substance that Fry, who was a mutual friend, should, as a matter of trust and confidence, be formally invested with the legal title, and that the time of payment should be extended, and plaintiff's equity of redemption recognized and preserved.   Upon the evidence in the case Fry was not in a proper sense a purchaser of the land, but a mere depositary of the legal title, at the solicitation of Thompson and by the consent of the plaintiff.   He paid nothing and received nothing.   So between him and Marshall the relations were substantially the same as that of the parties in the case of *Madigan* v. *Mead*, 31 Minn. 94, (16 N. W. Rep. 539.)   So that if Marshall had subsequently satisfied the debt, or the land had been sold for more than sufficient to pay it, he would have been entitled to redeem or to an accounting.   The plaintiff's rights must be determined by the character of the original transaction of November 15, 1876.   There is no finding, nor is there any evidence, that Marshall ever conveyed or authorized the conveyance of this land in satisfaction of the debt to Thompson.   Had he intended to do so, without reserving any right of redemption, under the evidence in the case no shadow of excuse or reason for the arrangement with Fry is apparent; while a sufficient reason for it appears in his own embarrassment and hope of realizing much more out of it, and in the belief of Thompson that an absolute deed of the land to Fry, in whom both had confidence, would be mutually advantageous, and, if the land was not disposed of, and the debt not paid, might save the necessity of foreclosure.

Though a mortgagee may purchase the equity of redemption, yet where the relation of mortgagor and mortgagee is once established, the courts scrutinize with great jealousy the acquisition of the equity of redemption by the mortgagee in any other way than by regular foreclosure.   *Niggeler* v. *Maurin*, 34 Minn. 118, (24 N. W. Rep. 369.) And additional conveyances exacted or secured by the mortgagee for his benefit cannot be used to prevent a redemption.   They "proceed

from the same old root, and are subject to the same equity; otherwise hardship and oppression might be practised upon the mortgagor." *Holridge* v. *Gillespie*, 2 John. Ch. 33. The rule is inflexible, "once a mortgage, always a mortgage." Nor is it material that the note or personal obligation evidencing the debt is surrendered or cancelled, the debt remaining in fact unpaid. *Holmes* v. *Grant*, 8 Paige, 243, 251; *Clark* v. *Henry*, 2 Cow. 324; *Hone* v. *Fisher*, 2 Barb. Ch. 559. Had Marshall, under the same circumstances, conveyed the land directly to Thompson as further or a new form of security, or with an understanding that his equity was to be preserved, and not in payment and absolute satisfaction, the former would still have retained his equity of redemption. And the substitution of a third person as grantee, for reasons satisfactory to the parties, upon request of the mortgagee, to hold the legal title absolute in form, for the mutual benefit of the mortgagor and mortgagee, and the subsequent transfer of the title to the latter, as was done in this case, amounted to the same thing. Under that arrangement the debt remained unpaid, though new securities were substituted. We think this unquestionably appears. Thompson still remained mortgagee of the same land for the same debt, which was extended in the new arrangement for three years, and the old mortgage was never cancelled. Fry was a mere trustee of the legal title, and had no interest except to be protected from personal liability upon his note. Some stress is laid upon the fact that the mortgage of Fry recites that it was given for the purchase-money, But the actual facts in such cases control recitals. Besides, Fry's wife did not join in the mortgage, and the object of the recital doubtless was to show that the deed and mortgage were one transaction.

It was not necessary, then, to entitle Marshall to redeem, that the deed should have passed directly from him. Whenever property is transferred, no matter in what form, or by what conveyance or contrivance for the transfer thereof, if in reality it is security for a debt or the performance of some condition, equity will treat the transfer, in effect, as a mortgage, and it is not material that the person in whom the right of redemption is recognized has only an equitable title, or that the conveyance is made by a third party, nor whether

any personal obligation of the debtor, or personal remedy, is preserved against him or not. The courts will look through the form into the actual character of the transaction. *Niggeler* v. *Maurin*, 34 Minn. 118, (24 N. W. Rep. 369;) *Fisk* v. *Stewart*, 24 Minn. 97; *Madigan* v. *Mead*, 31 Minn. 94, (16 N. W. Rep. 539;) *King* v. *Remington*, 36 Minn. 15, 24, (29 N. W. Rep. 352;) *Livingston* v. *Ives*, 35 Minn. 55, (27 N. W. Rep. 74;) *Hoile* v. *Bailey*, 58 Wis. 434, 448, (17 N. W. Rep. 322,) and cases; *Starks* v. *Redfield*, 52 Wis. 349, (9 N. W. Rep. 168;) *Russell* v. *Southard*, 12 How. 139, 152; *Carr* v. *Carr*, 52 N. Y. 251, 258; *Morris* v. *Budlong*, 78 N. Y. 543, 553; *Bowery Nat. Bank* v. *Duncan*, 12 Hun, 405; *Church* v. *Kidd*, 3 Hun, 254, 265. That such was the nature of the transaction between the parties of November 15, 1876, we think is quite clear from the evidence in the case. It would seem that Thompson was of the opinion, which is quite prevalent, that a deed absolute in form would be more advantageous than an ordinary mortgage merely, and that under it the right of redemption might subsequently summarily be cut off without foreclosure. And the plaintiff also seems to have had the same notion, and through ignorance of his legal rights delayed taking proceedings. The answer alleges that he had so delayed with full knowledge of his supposed rights and equities, which is denied in the reply, and it is not so found, or is found against the defendants. And this we think accounts for his omission of the property in his schedule in the bankruptcy proceedings. In any event his right to bring his action to redeem had not lapsed. *Livingston* v. *Ives*, 35 Minn. 55, 61, 62, (27 N. W. Rep. 74.)

The findings, however, upon the issues of fact are not such as to warrant this court in ordering judgment in plaintiff's favor, but the judgment must be reversed, and the case remanded for new trial.