MARY J. HEATON and Another v. HENRIETTA A. DARLING and Another.[1]

November 20, 1896.

Nos. 10,142—(78).

### Mortgage—What Constitutes—Evidence.

*Held,* upon the evidence produced on the trial of this action, which was brought under the provisions of G. S. 1894, § 6118, to dispossess mortgagors of real property, as unlawfully holding over after the expiration of the redemption period, upon a foreclosure by advertisement, that such evidence absolutely required findings of fact that the relation of mortgagors and mortgagees still continued between the parties to the foreclosure proceedings, notwithstanding such foreclosure, and that the trial court erred when finding to the contrary, and ordering judgment that plaintiff mortgagees have immediate restitution of the premises.

Appeal by defendants from an order of the district court for Hennepin county, Russell, J., denying a motion for a new trial. Reversed.

*Albee Smith,* for appellants.

*S. A. Reed,* for respondents.

COLLINS, J. There is little or no dispute over the controlling facts in this case, and the question is whether, upon these facts, the findings of the court below against defendant husband and wife in possession of the premises from which plaintiffs seek to eject them under the provisions of G. S. 1894, § 6118, can be sustained, the claim being that the evidence required findings and conclusions against plaintiffs. It is, therefore, essential that the facts be quite fully stated.

The wife was the owner of the property in controversy. Two mortgages had been placed on the same, and an attempt had been made to foreclose one. The foreclosure by advertisement was defective, but, if regular, the year of redemption would have expired some time prior to the day on which defendants applied to plaintiff Stewart, who was also agent for plaintiff Heaton, for pecuniary assistance; informing him that the mortgagee, although not admitting that the foreclosure was irregular, stood ready to accept the money. The property was also subject to tax liens and a third mort-

[1] Reported in 68 N. W. 1087.

gage. It is evident that defendants were anxious to get the two mortgages first mentioned out of the hands of the then owners, and into the hands of parties who would show more forbearance, and allow them an opportunity to make the amounts due, and the taxes, out of the property itself; and it is equally as clear that Stewart was quite ready to accommodate and aid them by taking assignments and advancing the money needed, if satisfied as to the sufficiency of the security. Stewart required an appraisement of the property by his own representative, and the completion of the abstract to date, and both things were done at defendants' expense.

It also appears that defendants wanted both mortgages foreclosed, and the property bid in by plaintiffs, that it might be relieved of the third mortgage, and the way cleared for a sale, if a purchaser could be found. Stewart's testimony as to what was said and agreed upon by the parties is as follows:

Darling said the mortgagee "wanted the debt paid, wanted it all, and he could not pay it all, and he wanted I should buy the mortgages, so as to give him time on it; give him time by paying the interest. He wanted that I should buy the mortgages and have them foreclosed, because there were other incumbrances besides that on there, and have the redemption entire, in order to have a good title, that he could trade to somebody when he got a chance to sell."

And again:

"I told him, if he could pay the interest up prompt, he could have anything he wanted. I told him, as long as he kept the interest up, eight per cent., he could have the money just as long as he wanted it; we didn't care about the title; that we could sell it back to him for that, and, if he had a chance to sell, he might have all there was on top."

And upon being interrogated as to the foreclosures, which were made by advertisement soon after the assignments to defendant Heaton, Stewart also testified that Darling

"wanted the title to come to us, because his wife and he could not give a good title; and I told him I just as lief hold it, but he would have to make prompt payment, or I would give him simply an agreement to convey it back to them if he kept the interest paid. I told him he would have to pay the interest prompt; that time must be of the essence of the contract, but, if he kept the interest paid, he could have the money just as long as he kept the interest paid, whether it was longer or shorter."

As before stated, both mortgages were foreclosed, the year for redemption expiring as to one on November 17, 1893, and as to the other on December 13 of the same year, the plaintiffs being joint purchasers at the sales. January 5, 1894, Stewart wrote to defendants, stating that the period of redemption had expired, and also the total amount due January 1 for principal, interest, foreclosure expenses, and taxes,—in all, $20,476.66. He also wrote:

"The verbal agreement between you and me was that you should have the privilege of buying the premises back at any time within a few years, by paying interest on the amount the premises cost the purchasers at the foreclosure, and the tax title, taxes, insurance, and all the necessary expenses, at the rate of 8 per cent. per annum, or payable semiannually, and that time should be of the essence of the contract; so that, if you fail to pay promptly as agreed, you would have no further claim to the place. Consequently, if you retain any interest in the premises under that agreement, you must pay on July 1, 1894, or before, $819.06."

He expressed doubt as to defendants' ability to make the payment, and urged that they find a purchaser without delay, "because, if that interest is not promptly paid at that time, possession of the premises will be taken, and rented for the benefit of the present owners." After the expiration of the redemption year, and prior to the bringing of this action, defendants, at various times, paid to plaintiffs something over $400, for which the latter gave receipts as for rent of the premises.

We have, therefore, to inquire whether, from the evidence, it conclusively appears that the parties intended that plaintiffs should procure assignments of the mortgages, foreclose the same, pay up the taxes, and, after the year of redemption expired, hold the legal title as security for the debt, and for defendants' benefit. If this was the transaction, plaintiffs' claim upon the property is in the nature of a mortgage, and will remain so until duly foreclosed. If it was the intention of the parties, as shown by what was agreed upon and the surrounding circumstances, that the premises should be held as security by plaintiffs after perfect title had ripened through the foreclosures, the amounts paid for the assignments and as taxes, as agreed on, constituted a debt in equity sufficient to support the character of the transaction as a mortgage, and it was not important that the

defendants should enter into any promise or personal covenant to repay the amount. Niggeler v. Maurin, 34 Minn. 118, 24 N. W. 369. Nor can it make any difference, when determining the true character of the transaction, that, instead of procuring a conveyance of defendants' equity in the property and then completing title by foreclosure, plaintiffs depended solely upon the mortgages and the proceedings to foreclose.

We are to determine the nature and effect of the transaction by what was intended to be and was accomplished, not by the methods pursued. And we are unable to agree with counsel that the agreement as testified to by Mr. Stewart was, at most, nothing but a conditional sale of the property, or an agreement to resell to defendants in case the title should mature in plaintiffs. There is a total absence of evidence tending to indicate that either of the parties so intended it, until the letter was written, after the year of redemption had expired, in which Mr. Stewart spoke of the verbal agreement as the "privilege of buying the premises back at any time within a few years." This was long after the contract had been made and acted upon, and consequently is of no weight when we are ascertaining its terms. It seems plain to us, unless we are to force a construction of the language used for the purpose of holding the agreement to have been for a conditional sale instead of a mortgage,—and that cannot be done, either on principle or authority,—that the arrangement between the parties was intended to be in the nature of a mortgage, rather than a conditional sale, and that this was so conclusively shown by the evidence as to demand a finding of fact of that import.

Counsel for plaintiffs has, in his brief, repeatedly referred to the fact that the money paid by defendants after the foreclosure was received and receipted for as rent for the premises. But this fact would not of itself change the real character of the original agreement, especially when we discover from Mr. Stewart's testimony that, during the negotiations which led to plaintiffs acquiring the title through foreclosure, he told Darling "that all we received for rent I would reckon in as part payment towards the amounts that were owing." We must not be understood as holding that parties situated as are these defendants could not, by a long-continued course of conduct, such as paying money as for rent, estop themselves from asserting the rights of a mortgagor in possession, but that question is not in this case.

Counsel for defendants has characterized this action as an attempt upon the part of the plaintiffs to take an undue advantage of his clients' necessities and to unjustly deprive them of an equity in valuable property. Taking into consideration the value as shown upon the trial, we see nothing to justify the assertion. But, however that may be, it is clear to us that defendants have an equitable right, which must be foreclosed, without regard to its money value.

Order reversed.