ROBERT M. STITT and Another v. RAT PORTAGE LUMBER COMPANY and Another.[1]

September 29, 1905.

Nos. 14,357—(178).

**Review of Findings of Fact.**

The rule that this court will not disturb the findings of the trial court on matters of fact, where there is evidence reasonably tending to sustain such findings, is here applied to findings of fact to the effect that the contract between plaintiffs and defendant did not make plaintiffs the mere agents of the defendants to buy timber tracts and conduct logging operations for an agreed price, but did result in an equitable or informal mortgage in which the title to lands purchased with money advanced to plaintiffs by defendants was taken in the name of a third person, consenting thereto, as security for the repayment of the consideration price and of other advances and for the performance of a logging contract by plaintiffs.

**Mortgage to Secure Advances.**

A deed absolute on its face may be shown by parol to be a mortgage to secure future advances and the performance of contractual duties, although the mortgagor did not at the time have title to the land, and although title was put in the name of a third person, under agreement with him, for convenience.

**Evidence.**

The evidence, to have such an effect, must be clear, positive, and convincing, but need not amount to proof beyond a reasonable doubt. It is not necessary, however, that the parties should have used the appropriate technical words. Equity looks at the substance of the transactions, and not at the forms of agreement nor at the mere terms used.

**Parol Defeasance.**

A deed absolute on its face with a parol defeasance is not avoided by the statute of frauds, nor by the statute abolishing resulting trusts.

**Statute of Frauds.**

A parol agreement for the conveyance of an interest in land, not to be performed within a year, may be taken out of the operation of the statute of frauds by part performance.

**Decree of Court.**

In an action upon a breach of an equitable mortgage, a court may determine the amount necessary and proper to be paid by the mortgagor

[1] Reported in 104 N. W. 561.

in redemption, and direct that, unless the amount so fixed be received and a conveyance executed by the mortgagee, the decree of court shall operate as a conveyance.

**Fraud.**

This relief is not to be refused because of want of mutuality in obligations, where the conveyance involves a security for the performance of personal services, nor because of fraud, where one of the motives in putting title to the land in a third person is an existing indebtedness of the mortgagor.

Action in the district court for Itasca county to enforce specific performance of an oral contract by which it was agreed certain land and timber purchased by plaintiffs with money advanced by defendant lumber company, the title to which was taken in the name of defendant Patrick A. Smith, was to be conveyed to plaintiffs upon repayment by them of the moneys so advanced. In the alternative plaintiffs demanded judgment for $60,000 damages. The case was tried before McClenahan, J., who made findings of fact, and as conclusions of law found that plaintiffs were the owners of the land and timber in question subject to the lien of defendant lumber company for $66,752.40; that upon payment of such amount plaintiffs were entitled to a conveyance of the lands; and in default of defendants' acceptance of such sum that plaintiffs should pay the same into court and that the judgment to be entered pursuant to the findings should stand as a conveyance. From an order denying a motion for a new trial, defendants appealed. Affirmed.

*R. R. Briggs* and *Victor J. Welch,* for appellants.

*H. B. Fryberger,* for respondents.

JAGGARD, J.[2]

In this case the plaintiffs and respondents and the defendant and appellant lumber company entered into two contracts. The earlier contract is significant only as it sheds light upon the the true nature of the later one, with which this litigation is concerned. There have been two trials of this action. In the first, the court found for the defendants; in the second, for the plaintiffs. The present appeal is from the latter.

1. The trial court properly resolved the disputed matters of fact for

[2] START, C. J., took no part.

the plaintiffs. The plaintiffs, loggers, without means to carry on logging operations, but with long experience in logging and with an extensive local knowledge of the section in northern Minnesota known as the "Bear River and Deer River Territory," and having options on a large number of timber tracts therein, entered into an agreement with the defendant the Rat Portage Lumber Company, engaged in manufacturing lumber. By the terms of that agreement, the lumber company was to advance moneys for buying lands and stumpage, not to exceed one hundred twenty-five million feet, on part of which plaintiffs held options, for paying taxes thereon, and for defraying the expenses of the logging operations of the plaintiffs. The plaintiffs were to secure the lands and stumpage, procure title deeds thereto to be executed to defendant and appellant Smith, to cut stumpage into logs at the rate of ten million feet per year, to do all work in that behalf, and to deliver the same to the Rat Portage Lumber Company in the Beltrami boom.

One controversy concerned the price to be paid for the logs. Plaintiff's case was that the price agreed upon was a sum "equal to that at which other similar logs cut from the particular and specified territory could be bought for and delivered at said boom, less seventy-five cents per thousand feet." The defendants' case was that such price was to be the market value of similar logs at the place and season of delivery, less seventy-five cents per thousand feet.

A second—and the most important—controversy had regard to the title to the land. Plaintiffs contended that moneys, not to exceed in amount the total sum which plaintiffs were to receive for logs delivered, were to be loaned by the defendant company to them; that the title to all lands was to be taken by Smith as security for said loans and for the performance of the terms of the contract by plaintiffs; that the said indebtedness by the plaintiffs to the Rat Portage Lumber Company was to be paid by the delivery of logs at the agreed time and place; and that the interest on said mortgage loan was to be paid by the deductions of seventy-five cents per thousand feet from the agreed price of logs. Plaintiffs further insisted that the reasons for putting the title in the name of Smith were as follows: That the lumber company had been advised by eminent local counsel that it was unable, as an alien corporation, to hold title to the quantity of lands in Minnesota involved in this transaction, and that plaintiffs did not want to take title because of an

indebtedness to third persons, on which judgment was subsequently rendered against them. Plaintiffs also claimed that Smith knew and understood that the conveyance was made to him as a security and for the convenience of the parties, consented thereto, and had no interest whatever in the premises. The defendants contended that the plaintiffs were to put into the scheme nothing but work, and to take out nothing but wages, to be determined on the basis of the price agreed to be paid for the logs at the time and place of delivery; that the contract did not create even a power coupled with an interest, but was a mere naked agency for the performance of services for a determinable consideration; and that the deduction of seventy-five cents from the price of logs was an inducement to the lumber company to thus employ the plaintiffs.

A third controversy was whether or not three pieces of land (known as the "Loper & Rumery," "Murray," and "Houlton" tracts) were within the terms of the contract. Plaintiffs' contention was that they commenced to carry out the terms of the contract after it was agreed upon, immediately closed options on timber which they already had, obtained other options on large tracts of timber at very advantageous prices, sent out estimators and explorers to examine the timber, negotiated the purchase of all the timber that was purchased directly, and paid for the same through the Northern Pacific Bank of Brainerd, with the exception of these three tracts; that as to these three tracts plaintiffs had estimated all the timber, had negotiated almost continuously for the purchase of the same for several months, and finally directed the defendant Smith to close the purchases on the terms that they gave him; and that he acted as their agent in closing such purchases. Accordingly the plaintiffs claimed that these tracts were as much within the terms of the contract as any other lands. On the other hand, defendants claimed that these lands were Smith's own property, as they were Smith's own purchase.

The fourth controversy arose as to the breach of the contract. Plaintiffs claim that they procured deeds to timber tracts, took possession of and used the lands in logging operations, put in general permanent improvements, and proceeded to and did deliver logs in large quantities; that defendant the Rat Portage Lumber Company advanced moneys to the extent of $205,197.85; that plaintiffs delivered logs of the contract

value of $138,445.44; that before this suit was brought defendant was guilty of a breach of contract, without cause, in refusing to advance money in accordance with the contract, and in refusing to allow the plaintiffs to log under the contract, unless they would enter into a different agreement with the Rat Portage Lumber Company; and that to such end defendant company notified the plaintiffs that it would no longer carry out the terms of the original contract. Plaintiffs argue that the real reason for this breach was the great increase in the value of timber lands, whereby it became profitable to the lumber company to repudiate the agreement and to claim title to the timber tracts. Plaintiffs further insist that, immediately after the refusal of said defendant corporation to further perform said contract, the plaintiffs offered to perform their part thereof, but said offer was refused by said defendant, whereupon the plaintiffs offered to pay said defendant corporation all sums of money advanced by it under the terms of said contract to and for the plaintiffs, over and above the payments and credits, and demanded from the defendants a conveyance of all their interests in and to said lands and timber, which offer and demand were at all times refused and rejected. The defendants denied the breach of contract and tender of performance by plaintiffs.

The trial court found with the plaintiffs on all these controversies of fact. One of the essential questions presented to this court is whether or not such findings were justified by the evidence. The record in this case is voluminous. The paper book contains two thousand seventy-seven pages of printed matter. It is impracticable to completely review or discuss the evidence on these various points of dispute. To do so partially would serve no useful purpose. Reference will, however, subsequently be made to the testimony concerning the agreement as to the title of the land and the general legal character of the transactions. A careful reading of the entire record has satisfied us that the findings of the trial court as to the nature of the contract into which the parties entered, and as to its breach by defendants were justified by the evidence. Those findings, examined in connection with the relevant portions of the testimony, demonstrate the trial court's familiarity with the history and details of the case, the thoroughness of his consideration, and the soundness of his conclusions. There is abundant evidence to sustain each material finding. The rule is well established that this

court will not disturb the findings of the trial court on matters of fact where there is evidence reasonably tending to sustain such findings. Dunnell, Minn. Pr. § 1654.

2. The contract thus entered into was valid in law. It resulted in a conveyance of lands as security and in the establishment of the relation of mortgagor and mortgagee between the parties to this action. That a deed absolute on its face can be shown by parol evidence to be in fact a mortgage is elementary. 3 Pomeroy, Eq. Jur. (3d Ed.) § 1196; 1 Jones, Mort. c. 8, § 282; Eaton, Eq. 448, 453; 20 Am. & Eng. Enc. (2d Ed.) 953; Peugh v. Davis; 96 U. S. 332; Heaton v. Darling, 66 Minn. 262, 68 N. W. 1087; Backus v. Burke, 63 Minn. 272, 65 N. W. 459; Terry v. Wilson's Estate, 50 Minn. 570, 52 N. W. 973; King v. McCarthy, 50 Minn. 222, 52 N. W. 648; Nye v. Swan, 49 Minn. 431, 52 N. W. 39. Parol evidence is admissible for this purpose notwithstanding the statute of frauds. Lord Hardwicke said that such evidence had nothing to do with the statute of frauds. Walker v. Walker, 2 Atk. 98; 1 Jones, Mort. § 322.

Evidence to have such an effect must be clear, positive, and convincing, although it need not amount to proof beyond a reasonable doubt. Wall v. Meilke, 89 Minn. 232, 94 N. W. 688; Minneapolis Threshing Machine Co. v. Jones, 95 Minn. 127, 103 N. W. 1017. And see Howland v. Blake, 97 U. S. 624; Ensign v. Ensign, 120 N. Y. 655, 24 N. E. 942. It would seem that more than the uncorroborated testimony of the plaintiff in interest is required. McClellan v. Sanford, 26 Wis. 595; Harter v. Christoph, 32 Wis. 245; Meier v. Bell, 119 Wis. 482, 97 N. W. 186; Moore v. Crawford, 130 U. S. 122, 9 Sup. Ct. 447; Adams v. Pilcher, 92 Ala. 474, 8 South. 757.

This record contains evidence fully conforming to this standard. Plaintiffs' own testimony was direct and positive in effect. Their contentions were in a measure corroborated by some of the lumber company's own witnesses and by many circumstances. That company charged to the plaintiffs on its books of account alike all the moneys advanced to them to buy stumpage and logging outfits, to do the logging, and to make permanent improvements. Upon performance of other contractual duties, plaintiffs became as much entitled to the lands as to the horses and logging outfit purchased with the same advances, to which, however, defendant does not appear to claim ownership.

It is true that witnesses did not use the specific technical terms conventionally appropriate to the creation of the relationship of mortgagor and mortgagee; but this is not essential. Equity looks at the substance and not at the form. "If the transaction resolves itself into a security, whatever may be its form, it is in equity a mortgage." Justice Story, in Flagg v. Mann, 2 Sumn. 486, 533, Fed. Cas. No. 4,847, (page 219). "And in order to carry out the actual intention in such case, an enlarged view of the facts constituting the transaction will be taken by the court." Vanderburgh, J., in Madigan v. Mead, 31 Minn. 94, 97, 16 N. W. 539. "In addition to these formal instruments which are properly entitled to the designation of mortgages," says Mr. Jones (1 Jones, Mort. c. 5, § 162, etc., discussing equitable mortgages by agreements or informal mortgages), "deeds and contracts which are wanting in * * * these characteristics of a common-law mortgage are often used by parties for the purpose of pledging real property or some interest in it, as security for a debt or obligation, and with the intention that they shall have effect as mortgages. Equity comes to the aid of the parties in such cases and gives effect to their intentions."

The transaction may result in a mortgage although there was properly no debt at the time the agreement was entered into. A deed absolute on its face may be shown by parol to be a mortgage to secure future advances. Madigan v. Mead, supra. And see Berry v. O'Connor, 33 Minn. 29, 31, 21 N. W. 840; Ackerman v. Hunsicker, 85 N. Y. 43; Boswell v. Goodwin, 31 Conn. 74; Jones v. Guarantee & Ind. Co., 101 U. S. 622; 1 Jones, Mort. §§ 364–374, inclusive. A mortgage is too narrowly defined when it is said to be a security for debt. It may be a security for the payment of a debt, or for the performance of some duty, or for both. Madigan v. Mead, supra. During the execution of this contract, and until its breach by defendants and their rejection of tender, there was both a debt and a duty of performance of obligation owed by the plaintiffs to the defendant. The court properly found that the amount of the indebtedness due by the plaintiffs to the defendant lumber company was the sum of $66,752.41.

It is not material that the conveyance should be made by the debtor or by him in whom the evidence of redemption is claimed to exist. Carr v. Carr, 52 N. Y. 251; Marshall v. Thompson, 39 Minn. 137, 141, 39 N. W. 309.

96 M.—3

The description of the land claimed to be given in mortgage in this case was made definite and certain whenever the deeds were executed to Smith.

The remedies of the parties were reciprocal. In case of a breach of contract without cause by either party, a suit for damages would lie at the instance of the injured and innocent one; in case of such breach by the plaintiffs, the defendants could foreclose their mortgage; in case of breach by the defendants, the plaintiffs could bring an action to redeem.

The rights of defendant Smith are not superior to those of the defendant the Rat Portage Lumber Company. The record discloses an abundance of evidence to justify the court in so finding without reference to any stipulation by former counsel for defendant on the first trial to the effect that Smith stood in no better position to the plaintiffs than the lumber company. Smith was a general officer of that company and held a fiduciary relation thereto. It is not necessary for us to here determine whether he was in a position to assert title to the property involved as against the corporation whose funds had paid for that property. Smith was a mere convenience in the transaction. He consented to everything and was a party to the contract. Every log was delivered under the contract to the company and every dollar of advances was paid by it. Smith's only function was to hold the legal title as security. "Accepting the conveyance on these conditions, he could hold the property on no other." Madigan v. Mead, supra. The intervention of such third person did not affect the rights of the parties. The rule is inflexible "once a mortgage always a mortgage." A substitution of a third person as grantee for reasons satisfactory to the parties to hold legal title absolute in form for the benefit of the mortgagor and mortgagee and the subsequent transfer of the title to the latter amounts to a mere mortgage. It is not material that such third person be made a trustee of the legal title as between the parties. Vanderburgh, J., in Marshall v. Thompson, supra. And see Randall v. Constans, 33 Minn. 329, 23 N. W. 530; Gill v. Newell, 13 Minn. 430 (462).

Counsel for defendants urge other reasons why these transactions did not result in a mortgage. We have considered all of them, but have here referred to those which we deem sufficient to call for discussion. We conclude that the trial court was correct in its findings of

fact and in its conclusion of law to the effect that the parties herein created an equitable mortgage. Madigan v. Mead, supra; Randall v. Constans, supra; Heaton v. Darling, 66 Minn. 262, 68 N. W. 1087; Schriber v. Le Clair, 66 Wis. 579, 29 N. W. 570, Sweet v. Mitchell, 15 Wis. 709; Schneider v. Reed, 123 Wis. 488, 101 N. W. 682; Canda v. Totten, 157 N. Y. 281, 51 N. E. 989; Ryan v. Dox, 34 N. Y. 307.

3. The transactions were not invalid because of the statute of frauds. With great force counsel for the defendants has insisted that, if the plaintiffs' own view of the evidence be correct, the result must be a contract involving a trust or power over or concerning land and relating thereto, which by its terms was not to be performed within a year, and that such contract was void under two sections of the statute of frauds, viz., sections 4209, 4213, G. S. 1894. It is a conclusive answer to this that this court has held that the relationship between the parties finally established by the testimony was that of mortgagor and mortgagee, and that this case is no more within the statute of frauds than is the ordinary formal mortgage. But if the defendants' view of the transaction of the parties be accepted, the plaintiffs are still entitled to relief. The statute of frauds especially provides that nothing in the chapter which contains these two sections shall be construed to abridge the powers of courts of equity to compel specific performance in cases of part performance of such agreements. Section 4216. The fact that a contract for an interest in lands may not be performed within a year does not destroy the force of the equitable doctrine of part performance nor prevent its application. Grant v. Ramsey, 7 Oh. St. 157; Rowell v. Smith, 123 Wis. 510, 102 N. W. 1, 9; Fall v. Hazelrigg, 45 Ind. 576; Baynes v. Chastain, 68 Ind. 376; Wallace v. Scoggins, 17 Ore. 476, 21 Pac. 558; Ryan v. Dox, 34 N. Y. 307. This record makes out a clear case of part performance. The plaintiffs, pursuant to the agreement, procured deeds to the lands involved, went into possession thereof, built camps, cleared out logging and tote roads, constructed dams, cleaned out streams, opened up part of the lands as a farm, and raised crops. Their possession was of the character and extent appropriate in that neighborhood for lands of this class. They paid on the mortgage indebtedness the sum of $138,445.44. It is not feasible to consider this testimony in detail. The conclusion that part performance was made out is reached by this court without reference to the stipulation, made in

open court, on the first trial of this case by the then counsel for the defendant with reference to the adequacy of part performance shown within the meaning of the equitable doctrine relating to part performance of contract nonactionable under the statute of frauds.

4. The transactions were not invalid because of the statute abolishing uses and trusts. Counsel for defendant has very earnestly urged that the view of the testimony most favorable to the plaintiffs, possible to be taken, made out a case in which the consideration for all lands purchased was supplied by the defendant company under a parol agreement between plaintiffs and defendant that the title to all lands and stumpage should be, and that the same was taken in the name of Smith; that the statute has abolished the trust which might otherwise have resulted (G. S. 1894, §§ 4272, 4280, 4282); that no benefit accrued in this transaction to either plaintiffs or defendant company, but that Smith took the entire title, both legal and equitable; and that no parol trust to an absolute conveyance can be based on a part performance. There is an obvious and radical distinction between cases where one person owns or pays money for land, the title to which is put in the name of another person for convenience, under a parol agreement to reconvey or to convey as directed, and cases where one person borrows money from or contracts an obligation to another upon which land is bought, title to which is put in the name of that other or of a third person as security for the repayment of the loan or the discharge of the obligation. In the former class of cases, however varied or complicated the particular facts may be, no resulting trust arises, with the exception of cases especially provided for by statute. Pillsbury-Washburn Flour Mills Co. v. Kistler, 53 Minn. 123, 54 N. W. 1063; Anderson v. Anderson, 81 Minn. 329, 84 N. W. 112. In the latter class of cases, the relationship established is not within the statute abolishing uses and trusts; and in this case the interest accruing to the plaintiff is no more inhibited by law than is the interest of the ordinary mortgagor.

5. The relief granted by the trial court was proper. It held that the defendant lumber company has a valid lien on the premises for the sum of $66,752.40, that plaintiff was entitled to redeem said land and timber upon payment of said sum to said defendant; that if said defendant refused to accept payment in accordance with its order, and to execute a conveyance to plaintiffs, then the decree of the court should stand as

a conveyance to plaintiffs.   This decree is not invalid because of the objection that it is a decree of specific performance of a contract which lacks mutuality of remedy, inasmuch as the personal services of the plaintiffs are called for by it.   As has been pointed out, the remedies on this contract are reciprocal.   Moreover, "the doctrine of this court is that, if a contract for the conveyance of real estate is supported by a valid consideration and there is no other good reason why it should not be specifically enforced, except the one of mutuality of remedy, it will be so enforced."   Lamprey v. St. Paul & C. Ry. Co., 89 Minn. 187, 192, 94 N. W. 555.   It is not material by what name the action is called. Whether this be a proceeding to compel specific performance of a contract or an action to redeem and for an accounting, the court properly determined the remedy required by the record presented and granted the relief which the plaintiffs were entitled to in equity.

6. The assignments of error made by appellant number two hundred nineteen.   All the objections which we regard as essential have been here considered and determined.   These assignments point out also some minor errors, especially with respect to rulings upon evidence. None of these, however, justify a reversal of the findings of fact, and the conclusions of law of the trial court.

Order affirmed.